# Sheffield Land, Iron & Coal Co. v. Neill.

*Bill in Equity by Vendor, for Rescission of Contract.*

1. *Registration as constructive delivery of deed.*—The intentional delivery of a deed by the grantor to the probate judge, for registration, may be a sufficient delivery to the grantee, though he never had actual possession, and was even ignorant of the existence of the deed; and a delivery for registration, by mistake of the grantor's clerk, may, by long acquiescence, operate as a valid and effectual delivery, on the presumption that the mistake has been waived.

2. *Rescission of contract at suit of vendor.*—On a sale of town lots by a private corporation at auction, part of the purchase-money to be paid in cash, when a deed would be delivered, and notes and mortgages executed for the deferred payments; the general manager of the corporation having accepted from a purchaser his draft at thirty days instead of a payment in cash, and, by mistake, delivered the deed to the probate judge for registration, afterwards paying the fee, and retaining possession of the deed, the draft not having been paid; the right to a rescission in equity is barred by *laches* after the lapse of more than two years and a half, when it appears that the vendor still retained the notes and mortgage, and that the market value of the land had but recently increased.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 22d December, 1886, by the appellant corporation, against William M. Neill; and prayed the rescission of a contract for the sale of several town lots in Sheffield, and the cancellation of the appellant's conveyance to the defendant, as a cloud on the title, it having been recorded by mistake as alleged. The chancellor sustained a demurrer to the bill, and his decree is here assigned as error. The opinion states the material facts.

EMMET O'NEAL, for appellant, cited *Alexander v. Alexander*, 71 Ala. 298; *Smith v. Cockrell*, 66 Ala. 79; 13 Vesey, 224; 2 Story's Equity, § 780; *Kirby v. Harrison*, 59 Amer. Dec. 680; *Remington v. Kelly*, 7 Ohio, 97; *Higley v. Whitaker*, 8 Ohio, 201; *Johnson v. Evans*, 50 Amer. Dec. 678;

5 Rich. Eq. 370; 1 Hoff. Ch. 123; 6 Wheat. 528; 15 Mich. 499; 4 Mich. 573; 4 John. Ch. 559; 8 Paige, 426; 2 Beav. 183; 6 Ib. 126; 3 Leigh, 161; 2 Clark, Iowa, 126.

J. B. MOORE, *contra*, cited *Long v. Brown*, 4 Ala. 622; 31 Ala. 123; 94 U. S. 214; 5 John. Ch. 29; Waterman on Spec. Performance, §§ 457–8, 462; 1 Sm. & Mar. Ch. 376; 3 Pomeroy's Equity, § 1408; Whart. Contracts, vol. 1, § 258; 2 *Ib.* § 888; *Elsberry v. Boykin*, 65 Ala. 341; *Williams v. Higgins*, 69 Ala. 522.

SOMERVILLE, J.—The present case is argued by appellant's counsel mainly upon the theory, that the case made by the bill is one for a mere cancellation of a deed to appellee Neill, delivered to the probate judge by mistake, and duly recorded by him on the book of records for deeds; said deed purporting to convey to the grantee certain urban lots in the town of Sheffield, and being alleged to be a cloud on the title of the complainant. A close analysis of the allegations of the bill, however, taken in connection with its prayer, shows that its true scope and purpose are to rescind a sale of land which may be regarded as executory, or executed, according to the inferences which we may be authorized to draw from the conduct of the contracting parties.

These lots were sold at public auction by the appellant corporation, on May the 9th and 10th, 1884; terms, one-fourth cash, the remainder of the purchase-money payable by notes of the purchaser in one, two and three years, secured by mortgage on the property. The managing agent of the company, A. H. Moses, without authority, accepted a draft of the purchaser on certain Montgomery bankers, for the first cash installment, and had the deed, notes and mortgage all prepared in due form, with the understanding that, when the draft was paid, the deed was to be delivered. The deed was delivered on May 12th, 1884, by mistake of a clerk of the general manager, to the probate judge, and was by him recorded. After discovery of this fact, the fees for registration were paid by A. H. Moses, and the deeds were taken from the office of the probate judge. The appellee's draft was not paid, for want of funds in the hands of the drawees. The appellee was requested to pay the amount due, and neglecting to do so, was asked to make a quit-claim deed back to the company, which he failed to do. When this request was made does not appear, except

that it is alleged to have been before the considerable rise in value of the land, which seems to have occurred since the sale. The present bill was filed on December 22d, 1886, or more than two and a half years from the recording of the deed.

The intentional delivery of a deed to the probate judge for registration, although the grantee may never be in actual possession of the instrument, has been held to be a sufficient delivery to the grantee, although he was at the time ignorant of its existence.—*Elsberry v. Boykin*, 65 Ala. 336. In *Alexander v. Alexander*, 71 Ala. 295, it was left an open question, whether the presumption of delivery arising from this state of facts would be overturned by the retention of the deed in the possession of the grantor after it had been thus recorded. However this may be, it is apparent that the registration of a deed, although it was done by mistake, and the paper was retained by the grantor after being recorded, may be ratified by the grantor, by subsequent acts satisfactorily importing an intention to affirm the transaction as a valid delivery. By long acquiescence he may be presumed to have waived the mistake, and by failure to correct he may be inferred to have accepted the registration with its attendant consequences. The grantor, in other words occupies a position where he may by his conduct either affirm or disaffirm the act of registration as an act of delivery, especially when, as in this case, delivery itself is by agreement made to depend on the payment in cash of a single installment of a sum of money, and an executory sale by auction has already been made.

We deem it important, that a valid executory contract of sale between the parties had already been made by auction, the requisite memorandum being made to take it out of the operation of the statute of frauds. The papers, as above said, were all prepared—deed, notes and mortgage—to take effect when a cash payment should be made of one-fourth of the purchase-money. An unauthorized draft had been taken by the general manager for this payment, which itself, though not originally taken as cash, was capable of being so treated by the company as to operate as a waiver of such cash payment. The delay in seeking to rescind, we repeat, has been over two years and a half.

The rule is, that the right to rescind, when it does exist, must be exercised within a reasonable time. Undue *laches*, or want of diligence in asserting the right, will operate as a

waiver of it.—*Bryant v. Isburgh*, 74 Amer. Dec. 662, *note*, and cases cited. Time is not generally regarded in a court of equity as of the essence of a contract, where delay has worked no harm to the opposite party, although it may be made essential by the clearly expressed intention of the contracting parties.—3 Pom. Eq. Jur. § 1408. Especially is time not considered essential in ordinary contracts for the sale of land, where specific performance is sought to be enforced, the execution of such contracts often being compelled after years of delay. This general rule "is usually applied where the purchaser fails to pay the purchase-money at the appointed time. There, the compensation for delay can be easily adjusted, by allowing interest on the amount up to the date of payment."—*Bullock v. Adams*, 20 N. J. Eq. 371.

In such cases, where the purpose of the seller is to rescind, he should give an explicit notice to that effect, or do some positive act of equivalent import, which will put the opposite party on his guard, or else manifest his intention to rescind by filing his bill. It has been held in many cases, that a vendor of land can not put an end to a contract of sale, without a formal and *reasonable* notice that, unless the purchaser shall fulfill it, the vendor will not hold himself further bound.—*Falls v. Carpenter*, 1 Dev. & Bat. Eq. 237; s. c., 28 Amer. Dec. 592. It has accordingly been decided, that "a notice that non-performance by a certain day would be regarded as equivalent to a refusal to fulfill the contract, is not tantamount to a notice that the contract would then be considered as rescinded."—*Johnson v. Evans*, 50 Amer. Dec. 678, *note*. We may safely say, in the absence of suit brought, or of a formal notice, that no word or act will operate as notice of such intention, which is not positive in its character, and unambiguous in meaning, as showing a clear purpose to put an end to the contract, unless the opposite party shall comply with his part of the agreement in a reasonable time.—*Bryant v. Isburgh*, 74 Amer. Dec. 659, *note*.

Prompt action, moreover, is required in all such cases, where a party is invested with an option to rescind, where there has been, or is likely to be, a rapid fluctuation in the market-price value of the property.—*Gilmer v. Morris*, 80 Ala. 78; s. c., 60 Amer. Rep. 85. "He will not be permitted", it has been said, "to lie by, and wait for the rise or fall in the value of the property, and then act according to his interest in the matter."—*Johnson v. Evans*, 50 Amer.

11

Dec. 678, *note.* The just reason, given by Chief Justice Ruffin, in *Falls v. Carpenter*, 28 Amer. Dec. 607, *supra*, is, "because a favorable change ought not to profit him who would not run the risk of an unfavorable one." This principle, it is true, might, under other circumstances, affect the appellee, who was defendant in the court below, but it most equitably and chiefly affects that party upon whom the law casts the duty of affirmative action. That party, in the present case, is the complainant.

We think the delay in filing the bill in this case is fatal to the right of relief. The bill, as amended, alleges no fraud. Its object is to rescind on the ground of a default, which time may condone, and a mistake allowed to remain uncorrected for between two and three years. The complainant has not exercised due diligence in seeking to rescind the sale. No explicit notice of a purpose to rescind is shown, until the present suit was brought—a delay of two years and seven months. In the meanwhile, the deed to the purchaser has all along stood registered on the public record for conveyances, the fees for recording being paid by the general manager of the complainant. The draft has never been returned to the purchaser, but his notes and mortgage have been retained by the vendor, so as to hold the option to waive the cash payment at any time, recognize the registered deed as a delivery, and enforce the payment of the mortgage debt. The complainant must be charged with knowledge of these transactions on the part of its vice-president and general manager, who was invested with power to sell the lands of the company. The exercise of proper diligence on the part of the directors would have informed them as to these acts of its agent. Long acquiescence is ratification.

The decree of the chancellor, sustaining the demurrer to both the original and amended bills, is free from error, and must be affirmed.

CLOPTON, J., not sitting.