# Lockwood *v.* Fitts.

*Bill in Equity for Rescission of Contract for Exchange of Lands.*

1. *Rescission of contract; misrepresentations constituting fraud.*—A court of equity will rescind a contract for the sale of land, on account of a misrepresentation by the vendor relating to the subject-matter, constituting an inducement to the purchaser, upon which he had a right to rely, and did rely, and by which he was actually deceived and injured; but the representation must be the affirmation of a fact, in contradistinction to a mere expression of opinion.

2. *Same; representation as to value.*—An assertion by the vendor as to the present or prospective value of the property, not being the affirmation of a specific fact affecting the quality, is regarded as the expression of his mere judgment or opinion, in reference to a matter as to which the purchaser is supposed to be equally competent to form a correct opinion; and it is not sufficient ground for rescinding the contract, unless proved to have been made with a fraudulent intent, or unless artifice was employed to aid the deception.

3. *Same; representation as to location.*—A representation as to the location of the land, or its distance from a neighboring city, is the affirmation of a fact, which, if false and material, would authorize a rescission of the contract; but the representation must be precisely and definitely alleged, and clearly and satisfactorily proved as alleged.

4. *Same; waiver of right to rescind by laches.*—The right of the purchaser to rescind the contract, on the ground of fraud, may be lost by *laches*, or a failure to claim a rescission within a reasonable time

[Lockwood v. Fitts.]

after the discovery of the fraud, or by subsequent dealing with the property as owner; as here, where the lapse of four months after the discovery of the falsity of the representations as to value and location, during which the purchaser attempted to sell or exchange the property, was held to raise a presumption of acquiescence, and to furnish strong evidence that he did not rely on such representations, and was not induced by them to enter into the contract.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 29th October, 1887, by Julian L. Lockwood, against William A. Fitts; and sought the rescission and cancellation of a contract, by which the complainant sold and conveyed to the defendant, on the 26th March, 1887, an undivided one-fourth interest in a tract of land near Birmingham containing two hundred acres, in exchange for twenty lots near the city of Minneapolis. On final hearing, on pleadings and proof, the court dismissed the bill; and this decree is here assigned as error.

W. C. WARD, for appellant.—1. The jurisdiction of a court of equity to rescind a contract, on the ground of fraud, is well established; and it is equally as well established that misrepresentations of a material fact, on which the purchaser relies, and by which he is deceived and injured, constitute a fraud, whether made with a knowledge of their falsity, or recklessly. 1 Brick. Digest, 686, and cases there cited; 1 Add. Contracts, 446; 1 Benj. Sales, 575–6, n. 31; 44 Amer. Dec. 463, note; 1 Story's Equity, § 203; *Juzan v. Toulmin*, 9 Ala. 662; *Lester v. Mahan*, 25 Ala. 445; 10 Yerger, 20. (2.) The misrepresentations in this case, both as to value and location, are clearly proved; their materiality is patent, and undisputed; and they can not be regarded as a mere expression of an opinion, as to a matter equally open to the observation of each party. The parties did not trade at arm's length, or on terms of equality: the defendant knew what he was buying, having ocular evidence before him, while the complainant trusted entirely to his representations, never having seen the lots in Minnesota. *Lester v. Mahan*, 25 Ala. 445; Bigelow on Fraud, 16, 13; 2 Amer. Dec. 79, notes; 27 Ind. 531; 23 Wend. 260; 21 N. Y. 238; 19 Amer. Rep. 315. (3.) There has been no waiver of the right of rescission, either by positive acts indicative of affirmance, or by delay.—*Pierce v. Wilson*, 34 Ala. 596; Bigelow on Fraud, 185–7.

LANE & WHITE, *contra.*—(1.) The representations as to the value of the lots were merely the expression of an opinion, or words of commendation, such as the law allows; and do not give a right of rescission. *Simplex commendatio non obligat.*

Bigelow on Fraud, 490; Kerr on Fraud, 82–86; *Ellis v. Andrew*, 16 Amer. Rep. 379; *Dawson v. Graham*, 48 Iowa, 378; *Gordon v. Butler*, 105 U. S. 553; 56 N. Y. 83; 3 Wait's A. & D. 435; 71 Ind. 363; *Walker v. Railroad Co.*, 34 Miss. 245. (2.) The representations as to the location of the lots, or their distance from Minneapolis, if alleged with sufficient definiteness, are proved to be substantially correct. (3.) The right of rescission, if it ever existed, has been lost by acquiescence and delay.—2 Pom. Equity. §§ 817, 897, 965; Walker's Ch. (Mich.) 186; 91 U. S. 48; 8 Wait's A. & D. 522; 40 Cal. 535; 1 Dill. C. C. 333; 76 Amer. Dec. 148; 39 Amer. Dec. 342; 69 Penn. St. 253; 144 Mass. 546; 4 Mich. 508; 64 Maine, 191; 1 Denio, N. Y. 69; 67 Ill. 450; 4 N. J. 119.

CLOPTON, J.—On March 26, 1887, the parties made an exchange of lands—appellant conveying to appellee a one-fourth undivided interest in two hundred acres of land situated in Jefferson county, Alabama, containing iron ore, receiving in exchange twenty lots near Minneapolis, Minnesota. In the transaction, the land of appellant was rated at eight hundred dollars per acre, and the lots at two thousand dollars each. By the bill, defendant seeks a rescission of the contract, and cancellation of the conveyance made by him to appellee, on the ground of misrepresentation as to the location and value of the lots. The specific representations alleged in the bill are: "that the defendant assured and represented to complainant that said lots of land were each worth the sum of $2,000, two thousand dollars, in all $40,000, and that they were situated within three miles, or only a distance of three miles from the center of said city of Minneapolis, a large city and rapidly growing in the direction of said lots of land; that said lots of land would bring at a forced sale, or sale by the sheriff, the sum of one thousand dollars each." The answer denies the representations as charged in the bill, and avers that whatever statements defendant made as to the location and value of the lots were merely his opinion and judgment.

While a court of equity will rescind a contract procured by a misrepresentation by a vendor of land, relating to the subject-matter of the contract, and constituting an inducement to the purchaser, upon which he had a right to rely, and did rely, and by which he was actually deceived and injured, the representation must be the affirmation of a fact, in contradistinction to a mere expression of opinion. An assertion of a vendor as to the present or prospective value of property he is attempting to sell, if not the affirmation of a specific fact affecting the quality, will, of itself, form no substantive ground for a re-

scission of a contract. Such affirmations are regarded as the expressions of mere judgment or opinion in reference to the matter, upon which the purchaser is supposed to be competent to form as correct opinion as the vendor. They are the usual and common assertions in respect to property, made for the purpose of effecting a sale, upon which the purchaser can not safely rely, and are not sufficient ground for rescinding the contract, unless proved to have been made with a fraudulent intent, or artifice is employed to aid the deception.—1 Benj. on Sales, § 641, note 10; 2 Pom. Eq. Jur. § 278; *Horner v. Perkins*, 124 Mass. 431; *Gordon v. Butler*, 105 U. S. 523; *Suessegoetter v. Bengenheimer*, 46 Wis. 370. Complainant testifies, that defendant said the "lots would be very valuable, and would come into market soon, and that he considered them worth every dollar of two thousand dollars each. He said that said lots would sell at $1,000 each at a forced sale." Defendant testifies, that he never represented the lots to be worth two thousand dollars each, but that he said he thought they were worth one thousand dollars each. Taking the representation as testified by complainant, it is, in form, the expression of an opinion, and must have been so understood by him. The negotiation was pending several days, if not for two or more weeks, and nothing was said or done to hinder or prevent complainant from making inquiries as to the value of the lots. He said he would be satisfied if he could realize a thousand dollars per lot. Though the evidence shows they could not have been sold at that time for more than half that sum, nothing is shown to take the representation out of the operation of the general rule; of itself it forms no ground for relief. It does not appear to have been so stated that complainant could reasonably treat it as the affirmation of a fact upon which he could safely rely.

The representation as to the distance of the lots from the city of Minneapolis was the affirmation of a fact, which, if false and material, would authorize a rescission of the contract, unless complainant has lost his right by acquiescence or waiver. As to the distance from the business center of the city and the post-office, the witnesses vary from four and a half to five and a quarter miles. They also vary as to the place which is the business center. One of them testifies, and the only one who does testify to this fact, that the lots are three miles distant from the residence center; and the evidence shows that they are not three miles distant from the city limits proper. What was the representation as to the distance? Complainant testifies, on his direct examination, that defendant said, "lots were located about three miles from the center of town"; but, being

[Lockwood v. Fitts.]

asked on cross-examination to state the language of defendant, he answered, "defendant said that lots were situated in Remington Park, about three miles from the city of Minneapolis. I have given his language as near as I can remember it. . . . I do not remember whether he said the lots were a certain distance from the city of Minneapolis, or from the business portion of said city, or from the center of said city, but I understood it to be a certain distance from the center of said city." Defendant's testimony is that he said, "not more than three miles from the city", by which he meant, "from where it was built up." The only other witness who testified to this representation is Hawkins. His evidence is, "I remember it was stated positively by Fitts to Lockwood how far said lots were from the business portion or post-office of Minneapolis, but I do not now remember how far it was. I believe, however, it was about four miles in the direction of St. Paul." He admits that his recollection of the details is very indistinct, and his memory is at fault as to the direction of the lots. Complainant and defendant would probably recollect more distinctly the representation; and on their evidence we assume it to have been not more than three miles from the city. This representation is susceptible of different constructions; it may mean, from the limits of the city, or the business center, or the center of population, or the actual center. The allegation in the bill is, "within three miles, or only a distance of three miles, from the center of said city of Indianapolis." What center? In this class of cases, the representation alleged to be false must not only be precisely averred, but also clearly and satisfactorily proved as alleged. The truth or falsity of the representation depends on what part of the city it had reference to. On the different understandings of the parties, it is questionable whether the evidence proves the representation substantially as alleged in the bill; and if it does, the evidence, which is mainly directed to the distance of the lots from the business center, or post-office, does not clearly prove the representation to be false; the center of the city literally means the actual center; and there is no evidence that the business center, or post-office, is the central point. But there are features of this case, which render unnecessary further comment on the evidence as to distance.

The right to rescind the contract for fraud may be lost by its confirmation, or by a failure to manifest the election to disaffirm it within a reasonable time; or where the transaction is a sale of property, by dealing with the property as owner, after the discovery of the fraud. Mr. Pomeroy says: "All these considerations as to the nature of misrepresentation re-

[Lockwood v. Fitts.]

quire great punctuality and promptness of action by the deceived party upon the discovery of the fraud. . . . If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it was still subsisting and binding, he thereby waives all benefit and relief from the misrepresentations."—2 Pom. Eq. Jur. § 897. In *Dill v. Camp*, 27 Ala. 243, the following quotation is made approvingly from an English decision : "If the vendee neglect to return goods immediately upon discovering a breach of warranty or fraud, but keep them and treat them as his own, by putting them up to sell, or exercising other acts of ownership over them, he can not afterwards reject the contract."—*Parker v. Palmer*, 4 B. & A. 387 ; *Ex parte Briggs*, 1 Eq. L. R. 483 ; *Sheffield Land, C. & I. Co. v. Neill*, 87 Ala. 158.

A day or two after the exchange of the lands, complainant asked defendant for the name and address of his agent in Minneapolis. He states : "I opened correspondence with said agent, through whom I commenced to learn that the lots were not panning out as represented ; and meeting Capt. Fitts on the street a short while after, I called his attention to the above fact, and told him he was beating me out of a good deal of money ; and he brought in, that the way he had figured it out, he had gotten about ten thousand dollars the advantage of it." He states that this conversation occurred about the first of April—defendant says the tenth or fifteenth of the month. It is proper to remark, that defendant says that he said he had such advantage, if complainant's land was worth what he estimated. Brame, the agent, testifies, that he thinks he wrote complainant in the early Spring as to the value and location of the lots ; and defendant testifies that, about the tenth or fifteenth of April, complainant told him he had received a letter from Brame. On May 9th, 1887, complainant entered into a second agreement with defendant, for the exchange of another one-fourth interest in his lands for some other lands, and other lots near those first obtained, and which he took at one thousand dollars each ; but this agreement or exchange was not carried out. Complainant further states that he found out the value of the lots in the month of June. On July 23, 1887, he wrote to Brame the following letter : "As you once had charge of Capt. Fitts' property in your city, and should know something about it, I write to you to know if you think I could exchange it for some kind of property that would rent for something, so as to help pay the interest. The property I traded with him for, brings in no revenue, and I am not able to keep up the interest on it ; and if you know of any

trade that I could make for improved property, I would like you to send me a description of it. I own all of Blk. 18, Remington's 5, and ten lots in Blk. 22, and one lot in Calhoun Park." The lots mentioned in his letter as situated in block 22 and in Calhoun Park were embraced in the agreement of May 9th, 1887.

Complainant admits that he was informed of the value of the lots in June, and the evidence sufficiently shows that he discovered their location and value as early as April. According to his own testimony, the offer to rescind was made in August; and according to defendant's testimony, in that month he received a letter from complainant when in New York, stating that he would not consummate the second trade, nor would he let the first stand; and this was the first he had heard of an offer to rescind; also, that his offer to rescind was made after his return from New York, and a short time before the bill was filed, which was October 27, 1887. There is no evidence that complainant has confirmed the contract by entering into new stipulations in respect to its subject-matter; but delay in exercising the option to rescind is evidence of an election to treat the contract as valid, dependent for its weight upon the circumstances. At the time of the exchange of land, there was a mortgage for two hundred and fifty dollars on each lot, created by the vendor of defendant, the interest payable semi-annually, which complainant assumed to pay, receiving six additional lots in consideration thereof. The semi-annual interest became payable early in September, and is the interest to which complainant alludes in his letter to Brame. It was near this date that the offer to rescind was made. It should also be observed, that the estimates of the value of complainant's land, at the time of the exchange, greatly vary. In his letter to Brame, complainant states that he *owns* the lots, and proposes to exchange them for other property. This was after the discovery of the fraud, and is inconsistent with an election to disaffirm the contract. Such dealing is consistent only with acquiescence in the transaction, as subsisting and binding. The foregoing authorities authorize the conclusion, that such subsequent dealing with the property, accompanied by a distinct avowal of ownership, constitutes a waiver sufficient to defeat the equitable remedy; but we need not go so far. It certainly is evidence strongly tending to show that complainant did not rely upon the representations of value and location, and was not induced by them to enter into the contract; it raises a presumption of acquiescence, which he is called upon to rebut.—*Schiffer v. Dietry*, 83 N. Y. 300; *McCullough v. Scott*, 13 B. Mon. 172. The cir-

[Waldrop v. Friedman & Loveman.]

cumstances rather lead to the conclusion, that the offer to rescind was not the the result of a fraud committed by defendant, but of the inability of complainant to meet the interest becoming due on the mortgages. However exaggerated may have been the statement as to value, and whatever may have been the representation as to distance, on the whole case made by the record, we are forced to declare that complainant is not entitled to a rescission, and must be left to his remedy at law.

Affirmed.