# Ansley *v.* Bank of Piedmont.

*Action upon Promissory Notes given for the Purchase of Land.*

113 467
115 425

113 467
124 455
113 467
142 482

1. *Fraudulent representation in sale of land; retention of possession by vendee; pleading.*—In a court of law, the purchaser of land can not resist payment for fraud and misrepresentation, so long as he retains possession; and a plea seeking to avoid liability on the grounds of fraud or misrepresentation, but failing to aver surrender of possession or some sufficient reason for not doing so, before suit brought, is fatally defective.

2. *Rescission of contract for sale of land for fraud; presumption from laches.*—In order to avoid a contract for the sale of land on account of fraudulent representations, the vendee must offer to rescind promptly upon the discovery of the falsity of the representations; and the failure to do so, after a reasonable length of time, raises the presumption of acquiescence in its validity.

3. *Action on a contract; pleas of set-off and recoupment admit validity of contract.*—When, in an action upon a contract, the defendant pleads a set-off and recoupment, he thereby admits the validity of the contract sued upon.

4. *Avoidance of contract because of fraudulent misrepresentation; expression of opinion; when statements not misleading.*—The mere expression of an opinion, though acted upon, does not constitute fraud or give rise to a cause of action, nor can the party be misled by a representation known to be false; and while an engagement or promise to

[Ansley v. Bank of Piedmont.]

be fulfilled in the future is not of itself a representation, if such engagement or promise is made for the purpose of deceiving, and there is no intention at the time of performing it, it constitutes fraud, which will avoid a contract which was induced thereby.

5. *Breach of promise not enforceable; set-off; recoupment.*—The breach of a promise which will support a claim for recoupmnet or set-off must be one capable of enforcement; and if the contract is void for any reason, or the damages are too speculative and remote to be capable of ascertainment with reasonable certainty, they are not recoverable by way of set-off or recoupment.

6. *Action upon a contract; fraudulent misrepresentation; when no ground for set-off or recoupment.*—In an action for a promissory note given for the purchase price of land, damages arising from the failure of the vendor to secure the location of improvements consisting of manufactures, industrial plants, &c., in the town in which the lots were situated, and which were represented to the defendant would be made, are too remote and speculative to form the basis of a plea in recoupment or set-off.

7. *Number of pleas; repugnancy to each other and as single pleas.* A defendant, by separate pleas, may make as many defenses as he desires, whether repugnant to and inconsistent with each other or not; but a single plea must be consistent.

8. *Pleading and practice; misjoinder of defenses in pleas.*—In pleas setting up a set-off, or seeking to recover damages by way of recoupment, a claim based upon a cause of action which is *ex contractu*, can not be united in the same plea with a claim arising from a cause of action which is *ex delicto*.

9. *Same; objection to immaterial matter in plea; how raised.*—Where a plea contains both good matter of defense and also immaterial matter, the defect can not be reached by way of demurrer to the whole plea, but the objection should be raised by a motion to strike the immaterial matter.

10. *Usury; ante-dated note; pleading.*—It does not follow as matter of law that an ante-dated note is usurious, but the nature of the transaction and the intention of the parties control the question; and in a plea setting up usury in a suit upon such a note, in order to be sufficient, the facts should be averred, followed by an averment that it was done with the intent to avoid the law of usury.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAMES W. LAPSLEY.

This action was brought by the appellee against the appellant, to recover an amount due upon four promissory notes, which were executed by the defendant. The defendant filed many pleas. The 2d, 4th and 6th were as follows: "2. For further answer to plaintiff's complaint defendant saith, that he did not make or execute

the notes, which are the basis of this action, at the time alleged in the complaint, but he made said notes on or about the 5th day of February, 1890, and not on the 6th day of January, 1890, as alleged in the complaint; that said notes were drawn up by said Piedmont Land & Improvement Company, or by some agent of said company, on the 5th day of February, 1890, and ante-dated so as to bear interest and date from and on January 6th, 1890, instead of February 5th, 1890, the day on which they were executed, and defendant then signed said notes and delivered them to said land company, and defendant avers that by reason of the premises, and by reason of the fact that said notes were willfully and intentionally drawn so as to bear interest from January 6th, 1890, instead of February 5th, 1890, the day they were executed, and from which day they should have been made to draw interest, and were accepted by said Piedmont Land & Improvement Company, that the agreement to pay interest on said notes was usurious and void."

"4. Defendant for further answer says that the notes sued on were not made on the 6th day of January, 1890, as alleged in the complaint, but were made on or about the 5th day of February, 1890, and were given for the balance of the purchase money, to-wit, two-thirds of the purchase money of two little lots of land which are described in said notes, and which defendant was induced to purchase on or about said 5th day of February, 1890, of the Piedmont Land & Improvement Company, the payee named in said notes, through and by the false and fraudulent representations of the officers or agents and directors of said company made at the time of and prior to said purchase and the execution of said notes. That prior to the execution of said notes, this defendant paid the sum of $166.66 on each of said lots, it being one-third of the purchase money therefor, which said payment was made on or about the 5th of February, 1890. That said lots are not now and were not worth at the time of said purchase really over $50 apiece, and this defendant would not have purchased them at all but for the false and fraudulent representations made by the officers and agents of said Piedmont Land & Improvement Company who had charge of the selling of said lots, and who sold them. That at the time of and

[Ansley v. Bank of Piedmont.]

prior to the purchase of said lots by this defendant, said
Piedmont Land & Improvement Company owned a great
many lots in Piedmont which it was desirous of and try-
ing to sell. That said Company by its officers and
agents falsely stated to this defendant, and to the public
generally by advertisements in journals and newspapers,
and in circulars and posted notices, for the purpose of
inducing him and others to buy lots at high prices, that
said company had secured and guaranteed industries for
said town, consisting of a rolling mill, a car wheel
foundry, a charcoal furnace, a 100 tons coke furnace,
and that said company had $500,000 cash in hand with
which to secure industries for said town, and that one
million dollars would be spent in industries in said town
as soon as men and money could build them. That said
statements and representations and guarantees of said
company were false and fraudulent, and were made by
said company to induce this defendant and others to
buy lots from it. That this defendant believed said
statements and representations and guarantees, and did
not know whether the same were true or false, but he
relied on them, and the same were a material induce-
ment to him to purchase said lots, and but for the same
would not have purchased them. That said lots are not
worth $50 apiece now, and were worth no more at the
time of defendant's purchase of them than they are now,
and that it was the statements, representations and
guarantees of said company, or their statements and
representations that the building of the rolling mill, car
wheel foundry and furnaces were guaranteed, and their
representations and statements that they had $500,000
cash in hand with which to procure industries for Pied-
mont, and that a million dollars would go into indus-
tries in Piedmont as fast as money and men could build
them, that gave said lots a market value, and induced
defendant to purchase them. That said Piedmont Land
& Improvement Company is now and has been for a
long time insolvent. That it did not have $500,000 cash
in hand to secure industries for said town. That it had
not secured a rolling mill, car wheel works, coke furnace
of 100 tons and charcoal furnace; that said improvements
were not guaranteed and have not been built. That the
million dollars did not go into industries in said town,
as it represented it would. That if said industries had

been built they would have made valuable the lots purchased by this defendant as aforesaid. That said lots were not conveyed to defendant at the time he purchased them, and never have been conveyed to him or to anyone for him, or on his account. That on account of the worthlessness of said lots, and the false representations aforesaid of said Piedmont Land & Improvement Company, defendant has been damaged in the sum of $1,-000, which he hereby offers to recoup and set off against the plaintiff's claim in this action."

"6. The defendant for further answer to the complaint says that the notes sued on were made by him on the 5th day of February, 1890, and not on the 6th day of January, 1890. The said notes were given for the balance of the purchase money for certain lots of land described in said notes, that were sold to the defendant by the Piedmont Land & Improvement Company on said 5th day of February, 1890, for which defendant paid said company at the time of said purchase the sum of $166.66 on each of said lots, it being one-third of the price agreed on for each of said lots purchased as aforesaid by defendant of said company. That to induce the defendant to buy said lots, the said Piedmont Land & Improvement Company falsely and fraudulently represented to defendant that it had secured and guaranteed the building of a fifty ton charcoal furnace, a hundred ton coke furnace, a rolling mill, a car wheel foundry and other improvements in Piedmont, where said lots are located, and where said company owned a great many other lots, and that it had $500,000 cash in hand, with which to secure industries in Piedmont, and that $1,-000,000 would go into industries in Piedmont as fast as men and money could build them; that defendant believing that said representations were true, was thereby induced to buy, and did buy said lots and made said cash payments and executed the notes sued on as aforesaid; but in truth said Piedmont Land & Improvement Company did not have $500,000 cash in hand to secure industries with for Piedmont. That said rolling mill, furnaces and car wheel foundry had not been secured and guaranteed for Piedmont, and have not been built, and that said Piedmont Land & Improvement Company is now insolvent. That had said plants and improvements aforesaid been secured and guaranteed and built

[Ansley v. Bank of Piedmont.]

in said town of Piedmont, it would have greatly enhanced the value of the lots aforesaid purchased by defendant of said company; but as it is, said lots are of but little value, and are not now, and were not at the time of said purchase, but for the prospective value given them by said false and fraudulent representations, worth the cash price paid for them by defendant as aforesaid, and so this defendant avers that by reason of the false representations aforesaid, and the failure on the part of said company to make them good, this defendant has been deceived and damaged in the sum of $1,000, which he hereby offers to recoup and set off against the plaintiff to the extent of whatever sum is due on the notes sued on in this action."

There were many demurrers filed to each of the several special pleas. These demurrers were sustained to each of the pleas, with the exception of the 4th and 6th, and were overruled as to these.

The material facts of the case are sufficiently stated in the opinion, as are also the rulings of the court. There was judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court in sustaining the demurrers to each of his special pleas. The plaintiff also makes cross-assignments of error calling into question the ruling of the court in overruling the plaintiff's demurrer to the 4th and 6th pleas.

MATTHEWS & WHITESIDE, for appellant.—1. The defense set up by the pleas filed by the defendant presented a valid defense to the action; and the demurrers to all of them should have been overruled.—*Treadwell v. Tillis*, 108 Ala. 262; *Dowagiac Manfg. Co. v. Gibson*, 5 Amer. St. Rep. 697; 2 Pomeroy Eq. Jur., §§ 879, 880, 881; 1 Sutherland on Damages, §§ 181, 183, 185; 3 Wait's Actions & Def., 447; *Gibson v. Marquis*, 29 Ala. 669; *Eads v. Murphy*, 52 Ala. 520; *Rogers v. Salmon*, 8 Paige, 559; *Batterman v. Pierce*, 3 Hill, 171; *Davis v. Dickey*, 23 Ala. 848; *Peden v. Moore*, 1 Stew. & Port. 71; *Agnew v. Walden*, 84 Ala. 502; *Nelms v. Prewitt*, 37 Ala. 389; *Kelly v. Allen*, 34 Ala. 663.

2. If any of the matters of defense set up in the pleas constitute a defense to the action and are well pleaded, the pleas are not vitiated by reason of defective aver-

[Ansley v. Bank of Piedmont.]

ments therein of other matters; whether such matters, if well pleaded, would constitute a defense or not. In other words, the averment of mere surplusage, or defective averments of more defensive matter than is necessary, does not vitiate pleas containing averments of other defensive matter, that are invulnerable to the attack made upon them by demurrer.—*Bain v. Wells*, 107 Ala. 562. In this case, it would not be incumbent on defendant to sustain the defense relied upon by him, to prove that all the representations, alleged in the pleas to have been made by the land company, are untrue; but proof of any one of the several statements, which are capable of deceiving him and inducing the purchase, would be sufficient. Then as a logical sequence, it follows that it is immaterial whether or not all of them are properly pleaded, if some are, or even one is, which is material and induced action.—*L. & N. R. R. Co. v. Mothershed*, 97 Ala. 261; 2 Pom. Eq. Jur., §§ 880, 895; Kerr on Fraud & Mistake, 75.

3. If the lots were worth more than the cash payments and the defendant retains them, then plaintiff would be entitled to recover their actual value at the time of purchase, if it did not exceed the contract price; but as said company is guilty of making fraudulent and false representations and breached its agreement to the injury of defendant, neither it nor its assignee, the plaintiff, is entitled to recover the contract price of the property of defendant, unless the property is worth so much.—*Davis v. Dickey*, 23 Ala. 848; *Davis v. Badders*, 95 Ala. 348; *Agnew v. Walden*, 84 Ala. 502; *Peden v. Moore*, 1 Stew. & Port. 71; *Rogers v. Salmon*, 8 Paige, 559; *Swayne v. Waldo*, 5 Amer. St. Rep. 712; *Farmers L. & T. Co. v. Hunt*, 16 Barb. 514; 1 Suth. on Damages, §§ 170, 174, 189, 180, 181, 184; *Batterman v. Pierce*, 3 Hill, 171; *Dushane v. Benedict*, 120 N. S. 630; *Conner v. Winton*, 7 Ind. 523; *Mondel v. Steel*, 8 M. & W. 858; *Harmon v. Sanderson*, 6 S. & M. (Miss.) 41; *Lomi v. Tucker*, 4 C. & P. 15; *DeSewhanberg v. Buchanan*, 5 C. & P. 343; *Poulton v. Lattimore*, 9 B. & C. 259; *Street v. Blay*, 2 B. & Ad. 456; 2 Suth. on Dam., § 553.

CASSADY, BLACKWELL & KEITH and JOHN B. KNOX, *contra.*—The damages set up in the pleas were too remote, uncertain, speculative and conjectural.—*Fitzsim-*

*mons* v. *Chapman*, 26 Amer. Rep. 508; *Sherman* v. *Leonard*, 26 Amer. St. Rep. 101; *Brigham v. Carlisle*, 78 Ala. 248; *Union Ref. Co. v. Barton*, 77 Ala. 148; *Harper v. Weeks*, 89 Ala. 577; *Blanchard v. Ely*, 21 Wend. 342; 1 Sutherland on Damages, 111, 112.

2. The plea of usury was insufficient.—*Barr v. Collier*, 54 Ala. 39; *Hogg v. Ruffner*, 66 U. S. 115.

COLEMAN, J.—The suit is by the Bank of Piedmont, against the appellant, upon certain promissory notes executed by him in part payment of the purchase price of town lots sold by the Piedmont Land & Improvement Company at speculative prices and in anticipation of further advances, and which notes were assigned by the vendor to plaintiff after maturity. According to the pleas of the defendant, the present and real value of the lots did not exceed fifty dollars per lot, but their supposed prospective value at the time of the purchase exceeded five hundred dollars per lot. The defendant purchased at prospective prices. The defenses relied upon, as we gather from the seven special pleas, covering over seventeen printed pages, are in bar on account of the false and fraudulent representations by the vendor made with the intent to deceive, and which the defendant, with many others, *relied upon, and had the right* to rely upon, and without which false and fraudulent inducements, the defendant would not have purchased; and the breach of certain promises, assurances and guarantees made by the vendor, which resulted in damage to the defendant and which are claimed in recoupment and set-off. The pleader declares that these representations were made in "*divers ways*" to-wit, *viva voce*, newspapers, journals, handbills, circulars, "teeming with inspirating and transporting prophecies and predictions of the rapidly budding and surely approaching glory and renown of the embryonic city, and were replete with representations, promises and assurances of many magnificent improvements, plants and industrial enterprises, among others, rolling mill, car wheel foundry, a furnace, splendid hotel, water works and electric plants, a three story bank building;" and in one place the pleader avers that the land company promised, and the unsuspecting public believed, that "one hundred millions of dollars" would be invested in industries in Piedmont as fast as they

could be built. We presume the pleader intended one million, instead of one hundred million. In contrast, the pleader avers that the lots where these magnificent and vast enterprises were to be constructed are now almost worthless, and only used for pasturage. The pleader did not add to his pleas, as a fitting sequel *"hinc illae lachrymæ"* and "this defense."

Each of these special pleas were demurred to, upon several grounds, and the court sustained the demurrer to all except as to pleas 4 and 6. The demurrers to pleas 4 and 6 were overruled, and on the ruling, the plaintiff, appellee, assigns cross errors. From this ruling of the court, sustaining the demurrers, under a special statute for the city court of Anniston, the defendant appealed.

Much litigation has resulted from the financial depression which for several years past has pervaded the country, and which followed the speculative era. We have had frequent occasion to declare the law applicable to many of such transactions. In a court of law, the purchaser of land can not resist the payment of the purchase money on the ground of the fraud and misrepresentation of the vendor, so long as he remains in possession, and refuses to surrender; and a plea which avers that the consideration of the contract sued upon was the purchase of land, and seeks to avoid liability upon the ground of fraud and misrepresentation on the part of the vendor, is defective unless it avers a surrender of the land, or some sufficient reason for not surrendering the same before suit brought.—*Jones v. The State,* 100 Ala. 209 ; *Garner v. Leverett,* 32 Ala. 410. The rule is different in a court of equity.—32 Ala. 410, *supra.* The pleas of defendant, setting up fraud and misrepresentation as a defense, going to the maintenance of the action by the plaintiff, were subject to this objection.

In the case of *Howle v. North Birmingham Land Co.,* 95 Ala. 391, we used this language : "The deceived party can not remain quiet, and hold in reserve his option to rescind, to be asserted if a turn in events shall make it to his advantage to get rid of his obligations, but to be abandoned if it shall suit his purposes to hold the other party to the contract. Fraudulent misrepresentations in the sale of real estate do not confer upon the defrauded party the speculative advantage of being entitled to wait for the rise or fall in the value of the prop-

erty, and then act according to his interest in the matter. If the deceived party, after discovering the falsity of the representations upon the truth of which he claims to have relied, does not promptly avail himself of the right to rescind, he loses the right, and his failure for a considerable length of time to impeach the transaction raises a presumption of his acquiescence in its validity. *Lockwood v. Fitts*, 90 Ala. 150; *Orendorff v. Tallman*, 90 Ala. 441; *Sheffield Land, I. & C. Co. v. Neill,* 87 Ala. 158; *Garrett v. Lynch,* 45 Ala. 204.'' The notes were executed in January or February, 1890, and were due in one and two years. The suit was instituted in March, 1895.

In some of defendant's special pleas, he offers to set-off, and others to recoup, damages sustained by him in consequence of the false and fraudulent misrepresentations of the vendor. When set-off and recoupment are pleaded, the defendant thereby recognizes and admits the validity of plaintiff's contract. A plea of set-off is in character a cross action, and exists independent of plaintiff's cause of action. Recoupment springs out of the contract or transaction between the parties.—*Grisham v. Bodman*, 111 Ala. 194; *Watson v. Kirby*, 112 Ala. 436.

Again, an engagement or promise to be fulfilled in the future is not a representation. The making of such engagement or promise, having no intention at the time of performing, and made for the purpose of deceiving, constitutes fraud which will avoid the contract.—*Nelson v. Shelby M. & I. Co.*, 96 Ala. 532; *Joseph v. Decatur Land &c. Co.*, 102 Ala. 346; *Birmingham Warehouse & Elev. Co. v. Elyton Land Co.*, 93 Ala. 549; *Bradfield v. Elyton Land Co.*, *Ib.* 527; *Cooke v. Cook*, 100 Ala. 175. Generally, the mere expression of an opinion, though acted upon, does not constitute a fraud, or give rise to a cause of action. Authorities *supra*. A party who knows that representations as to facts, when made, are untrue, can not claim to have been deceived and misled by them.—*Baker v. Maxwell*, 99 Ala. 558. The breach of a promise contractual in its nature, or of an engagment, which will support a claim for recoupment or set-off, must be one capable of enforcement. If void by reason of the statute of frauds, or otherwise; or if the damages claimed from the breach of a valid promise or engagement are speculative merely, remote and incapable of ascertainment with reasonable

certainty, in either event, the damages are not recoverable in a direct action or by way of set-off or recoupment. A plea which sets up a breach of a contract in support of a claim of set-off or recoupment, must be as distinct and unambiguous as if suing directly for the breach of the contract. He must advise his opponent of the precise grounds of his complaint. As a general rule, representations as to prospective values are mere expressions of opinions, and any statement or representation, incapable at the time, because of their character, of ascertainment as an existing fact, must be classed as mere expressions of opinion.

A defendant by separate pleas may make as many defenses as he sees proper, and the pleas are not objectionable because of repugnancy or inconsistency with each other. The rule does not apply to single pleas. A single plea should be consistent with itself. Facts which show fraud, and averred in a plea in bar to the action because of fraud, can not be made the basis in the same plea to support a claim of set-off or recoupment. In one plea the defendant might plead fraud in bar of the action, and in another plea he could ratify the sale and purchase, recognizing the right of the plaintiff to maintain the action for the purchase money, but claim damages for breach of the agreement or for a deceit practiced upon him. Any breach of an agreement, or any deceit which would support an independent action, growing out of the contract, is available by recoupment. When the plea is in bar on account of fraud, the plea must show a return of the property. A restoration is not required in order to authorize an action to recover damages for deceit, or for breach of agreement.

None of the pleas show a failure of consideration available as such to defendant. There is no pretense that there was any defect in title or that defendant was not able to obtain possession or that the lot was other than represented. The defenses are based upon rescission for fraud, and claim for damages, for breach of contract and for deceit. Another rule which applies to pleas as well as to declarations is, that a claim for damages *ex contractu* cannot be united in the same plea with a claim in tort. This rule was totally disregarded in some of the pleas. Another rule is, that if a plea contains good matter of defense and also immaterial matter, the defect

connot be reached by a demurrer to the whole plea. It may be that the court would entertain a demurrer directed specially to the immaterial matter, but the proper mode is by motion to strike out the immaterial matter. The plaintiff did not avail himself of either of these methods.

The demurrer of the plaintiff to some of the defendant's pleas raises the question as to whether the damages claimed as set-off or recoupment are not too uncertain for ascertainment, and purely conjectural. The basis upon which defendant's claim for damages rests, is that the vendor represented that it had a large amount of cash capital on hand for improving and building up valuable enterprises, and promised and agreed to erect, and guaranteed the erection and construction of, many valuable improvements in the "embryonic" city of Piedmont, as an inducement to purchasers, which undertakings and guarantees had been broken; and in some of the pleas it is averred that these statements were false and fraudulent &c., to the damage of the defendant. The pleas nowhere state the existing boundaries of the contemplated city, nor the location of these several improvements, nor the relative location of plaintiff's lot thereto. But independent of these difficulties which meet us at the very beginning, is there any data, other than purely conjectural, by which the enhancement of property can be reasonably ascertained from such causes? If the imimprovements had been actually made, by comparing the value of the lot after the improvements with the value before the improvements, the difference would show with some approximation the effect of the improvements. There would be facts upon which a jury might base calculations, but it seems to be the climax of conjecture and guess to undertake to declare in advance how any particular lot would be affected in the future by improvements, if made, and especially is this true when there is no obligation or representation as to their relative location. There is no standard in such a case by which the enhancement in value can be calculated. The plea shows on its face that the purchase of the lot was a mere adventure—an adventure, it may be, encouraged and induced by the fraudulent statements or promises of the vendor, and which deceptive inducements might be sufficient to authorize a recission of the purchase, but

[Georgia Home Insurance Co. v. Warten.]

the facts averred, if embodied in a complaint suing for damages, are wholly insufficient to support the action for their recovery.—*Brigham v. Carlisle,* 78 Ala. 243 ; *Young v. Cureton,* 87 Ala. 727. *Pollock v. Gantt,* 69 Ala. 377 ; *Sherman Center Town Co. v. Leonard,* 26 Am. St. Rep. 101 (46 Kan. 354) ; *Edward Roberts v. New York R. R. Co.,* 13 L .R. A. 499. Mere representations as to the present pecuniary value of a lot would hardly be actionable, for the reason that values are but the expression of opinions ; much less could the representations as to the future value of a lot be actionable. Clearly this would be but the expression of an opinion.—*Deming v. Darling,* 2 L. R. A. 743.

The plea of usury is objectionable. The note was given for the purchase of land. There was no question of the loan of money in the transaction. It may be that the notes as written represent truly the purchase price as agreed upon. It does not follow as a matter of law that a note antedated is usurious. Much depends upon the nature of the transaction and the intention of the parties. If the note was antedated, merely to avoid the law of usury, it would be usurious, but facts should be averred, followed by an averment that it was done with a usurious intent.

Applying the principles of law applicable to the pleas of the defendant, as declared in the foregoing opinion, and it will be seen that none of them, including pleas 4 and 6, are good.

Affirmed on direct appeal, and reversed on cross appeal.