# Dawson, *et al.* v. Copeland, *et al.*

*Bill to Remove Estate from Probate to Chancery Court, for an Accounting, and to Sell Lands for Partition.*

(Decided May 11, 1911.   Rehearing denied June 8, 1911.
55 South. 600.)

1. *Attorney and Client; Fiduciary Relations; Effect.*—While transactions between an attorney and client should be strictly scrutinized, and the attorney should give to the client the benefit of all the information he has regarding the value of property purchased by him from the client, yet such purchases are voidable only upon timely application.

2. *Cancellation of Instruments; Conveyance to Attorney; Laches.*—A client is not entitled to cancellation of a conveyance to his attorney where the client did not act promptly but awaited the termination of the litigation affecting the property, even if such conveyance was obtained without a disclosure by the attorney of his information.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by F. P. Dawson and others, against W. B. Copeland and others, to remove the administration of an estate from the probate to the chancery court, for an accounting, and to sell lands in a foreign jurisdiction for partition. From a decree denying relief, complainants appeal. Affirmed.

C. B. POWELL, for appellant. The burden was upon the trustee to show that the transaction was fair and just, and the consideration adequate.—*James v. James,* 55 Ala. 525; *Holt v. Agnew,* 67 Ala. 360; *Walker v. Nicrosi,* 135 Ala. 353. To be available laches must be pleaded.—*Solomon v. Solomon,* 81 Ala. 505. No estoppel was pleaded, and nothing from which an estoppel would arise is alleged.—*Hall & Farley v. Henderson,*

126 Ala. 490; *Jones v. Peebles,* 130 Ala. 273; *Scruggs v. Decatur Co.,* 86 Ala. 173. There was no laches shown. —*Scruggs v. Decatur Co., supra; James v. James, supra; Montgomery v. Lahey,* 121 Ala. 136; *Walker v. Nelson,* 18 So. 154.

L. J. HALEY, and BOWMAN, HARSH & BEDDOW, for appellee. Counsel discuss the errors assigned, but without citation of authority.

SIMPSON, J.—The bill in this case was filed by the appellants, seeking the removal of the estate of Harriet B. Parker, deceased, from the probate into chancery court, seeking an accounting by the representatives of R. H. Kerr, the original executor of said estate, and an order to the trustee to sell certain lands in Texas, to distribute, etc.

The bill alleges that said R. H. Kerr, a short time before his death, purchased a one-third interest in the lands in Texas from E. P. Dawson, one of the complainants and one of the beneficiaries under the will, for an inadequate consideration, that the conveyance by said Dawson is void by reason of the trust relation, and prays that said sale and conveyance be declared null and void.

The chancery court took jurisdiction, the settlement was made, and a reference made to the register, directing him to take testimony and report (1) whether said deed from Dawson to Kerr is valid, and (2) whether said Dawson is entitled to a one-third interest in the proceeds of the lands of said estate. The register reported, among other matters, that the deed from Dawson to Kerr is invalid, and that Dawson is entitled to a one-third interest in the proceeds from the sale of said lands, upon refunding $134 paid to Dawson by Kerr, subject to certain charges. Exceptions were filed to

this item of the report of the register, which exceptions were sustained by the chancellor, and the report otherwise confirmed. The only controversy raised by this appeal is as to the correctness of the decree of the chancellor in sustaining the said exceptions.

The evidence shows that said Kerr has been, as executor and attorney, corresponding with attorneys in Texas in regard to said lands, also with real estate men; that there were various reports as to the value of the lands, ranging from $1.50 to $2 and $3 per acre; that a suit had been instituted in Texas, by other parties claiming said lands, which suit was undetermined at the time of the making of said deed by Dawson May 13, 1904; that in February, 1901, one of the parties in interest had received a letter from a man in Texas, stating that the land was worth more than $3 per acre (the value at which the purchase from Dawson had been made), although he did not know any one who would buy it, though other lands near it had been sold at from $10 to $25 per acre. This letter, according to the testimony of Dawson's sister, who received it, was shown to Kerr shortly after received, but was not shown to Dawson until just after he had sold to Kerr.

Dawson testifies (subject to the objection of incompetency, as being a transaction with a deceased party whose estate is interested) that he had, on the same day as that on which the deed was made, returned to th office of Kerr, and offered to return the money; that his wife had refused to sign the deed, and that Kerr said it was not material for her to sign it; that his knowledge of his rights in the estate was that he "thought the thing was gone; Mr. Kerr had it for eight years, and he thought his charges would take it up," and that Mr. Kerr did not say anything to him about the value of the land at the time the deed was delivered;

[Dawson, et al. v. Copeland, et al.]

that he is a white man; was born in 1854; is of reasonable intelligence and moderate education, and engaged in business.

Dawson's wife also testified that she went to Kerr's office with her husband on the same day; told him that she would not sign the deed because she thought the land was worth more; that Dawson offered to pay the money back; that Kerr said he would return the deed, if they would secure him for the expenses necessary to recover the land. The deed in evidence shows no name of Mrs. Dawson in the body thereof, and no place left for her signature.

The witness Haley testifies that he heard the conversations between Kerr and Dawson which resulted in the sale of Dawson's interest in the land, one about a week before, and the other at the time the deed was signed; that Kerr explained to Dawson that some one would have to raise the money to pay the expenses of the litigation in Texas; that they figured out what they thought the land was worth, the amount of expenses, etc., and finally agreed on the amount; that Kerr stated to Dawson, on two occasions, that he did not want Dawson's interest in the land, and would much prefer that Dawson raise his share of the amount for expenses, and that if they succeeded in winning the suit he thought the land would become valuable at some time, and that Dawson stated that he preferred to sell out, at the amount stated in the deed, as he had recently purchased some property in Birmingham, or was about to purchase same, and needed the money for that purpose. Also that Kerr informed Dawson who the parties in Texas were with whom he had corresponded in regard to the land; that Kerr showed Dawson the correspondence, including a letter from one Hensley, offering $3 per acre for the land, being the same name

[Dawson, et al. v. Copeland, et al.]

as that signed to the letter of February 1, 1901, which was written to Dawson's sister, Mrs. Beasley, one of the parties to this suit. Also that the suit in Texas was not terminated until April, 1907.

It is true that the principles of our law require a strict scrutiny of transactions between attorney and client, and the attorney is required to give his client the benefit of all the information he possesses in regard to the value of property which he purchases from his client. In fact, to be above suspicion, and preserve the high ethical position of the attorney, in observing that uberrima fides which he should preserve, he should rarely, if ever, purchase from his client the property which is the subject of litigation, yet the transaction is not necessarily void, but voidable, on proper and timely application.

While the letter from Texas which was produced by Mrs. Beasley related to the supposed value of the property free of litigation, yet, if Kerr had that information at the time of the purchase from Dawson, and Dawson did not have it, Kerr should have told him of it. But the evidence shows that Dawson received the information shortly after the transaction, and in order to enforce his rights he should have made timely application to cancel the deed. It would be inequitable to allow him to speculate on the chances, by waiting until after the litigation had terminated, and then claim a cancellation of the deed.—*Sheffield Land, I. & C. Co. v. Neill,* 87 Ala. 158, 161, 162, 6 South. 1; *Goree v. Clements,* 94 Ala. 337, 343, 10 South. 906; *Connely v. Rue,* 148 Ill. 207, 35 N. E. 824, 828; 6 Cyc. 302.

The decree of the court is affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and MAYFIELD, JJ., concur.