# Allgood *v.* Bank of Piedmont.

*Bill in Equity to enforce Vendor's Lien.   Cross Bill for Rescission of Contract.*

1.   *Rescission of contract at instance of purchaser on ground of fraud; waiver of right to rescind by laches.*—The right to rescind a contract because of fraud or fraudulent representations, to be available must be asserted with promptness; and where a vendee, who, knowing of false and fraudulent representations on the part of the vendor, makes no offer to rescind until a bill is filed to enforce a vendor's lien five and one half years after the sale, his right to rescind is lost by such delay.

2.   *Same; cross-bill seeking to rescind must offer to do equity.*—A vendee in possession of the land purchased, and having in his possession a bond for title, is not, on bill filed to enforce a vendor's lien, entitled to a rescission of the contract of sale for fraudulent representations on the part of the vendor, where he does not, in his cross-bill filed in said suit asking for a rescission, offer to do equity and to put the vendor *in statu quo.*

APPEAL from the Chancery Court of Calhoun.

Tried before the Hon. JAMES R. DOWDELL.

The bill in this case was filed by the appellee, the Bank of Piedmont, against the appellant, J. P. Allgood, for the purpose of enforcing a vendor's lien upon certain lots situated in the town of Piedmont.   The bill was filed on August 15th, 1895, and averred that on January 6th, 1890, the Piedmont Land & Improvement Company, a corporation with its office and principal place of business at Piedmont, Alabama, sold to the respondent, J. P. Allgood, two certain lots in said town; that there was a part cash payment made upon the purchase price of these lots, and the respondent executed his promissory notes for the deferred payments; that these notes were duly transferred to the complainant, and have never been paid by the defendant.   The respondent filed an answer which he prayed to be taken as a cross-bill, in which he averred that one of the lots purchased was represented to him to have a frontage of 25 feet on one of the streets of Piedmont, while in fact it had only a frontage of from 14 to 16 feet; that the representation

that the lot was 25 feet front, was one of the induce-
ments for him to purchase it. The answer and cross-
bill then averred that the Piedmont Land & Improve-
ment Company, owned all the vacant land about the
town of Piedmont, advertised lots for sale, and for the
purpose of inducing this respondent to buy lots in
question, represented to him in advertisements, circu-
lars and printed notices, signed by said company, and
by statements of the officers and agents of said company,
that it had secured for said town of Piedmont, and
would guarantee to the people who purchased lots from
it, the erection of a rolling mill, car wheel foundry,
charcoal furnace, coke furnace, which industries would
employ hundreds of men, and add to the population of
said city, and further that said company had $500,000
in cash to secure industries for said town; but that such
guaranties, representations and statements were false
and fraudulent, and were made for the purpose of in-
ducing the respondent and others to buy said lots, and
that the respondent, believing such statements to be
true, bought the lots in question upon the faith of them;
and without such representations he would not have
made the purchase. It was then averred that these
promises, representations and guaranties have not been
made good, and that as a matter of fact, the lots are
now worthless and have no market value, nor did they
have any value at the time of the purchase, except by
reason of the false and fraudulent statements, represen-
tations and guaranties of said company; "that this
respondent has never intended to pay for said lots, and
that, while living in the same town with the officers
and agents of said company, and while said notes have
long been due, the said company knowing of the state-
ments and representations made by it, has never intima-
ted to him, in any shape or form, that it was expected
that he pay said notes."

The respondent then prays for a rescission of the con-
tract of sale, the cancellation and surrender of said
notes, and the refunding to him of the money which he
had paid to the land company. To this answer and
cross-bill the complainant in the original bill filed an
answer averring that the said Allgood bought the lots
on his own judgment, and denying that the Piedmont
Land & Improvement Company ever entered into any

[Allgood v. Bank of Piedmont.]

contract or guarantee in reference to the said lots, except such as are contained in the bond for title delivered to him at the time the sales were made.

The complainant then demurred to the cross-bill upon the following grounds: "1. For that it appears from said cross-bill that the complainant therein failed to exercise his alleged right to rescind within a reasonable time. 2. For that it does not appear from said cross-bill that the complainant therein sought a rescission of his contract within a reasonable time. 3. For that it does not appear from said cross-bill that the complainant therein is willing or offers to put said land company *in statu quo* on a rescission of said contract between him and said company."

This demurrer was sustained, and the defendant amended his answer and cross-bill by the following averments which constituted a part of paragraph 6 and paragraph 7 thereof: "And this respondent avers that, as said company had not promised or guaranteed that said industries should be erected, and said money spent at any given period, that he had been waiting to see what said company was going to do, having done all that he could prior to that time, by telling its officers that he did not intend to comply with his contract, unless said company made good its guaranties and promises; and this respondent avers that he did not sooner offer to rescind said contracts, because of· the various and repeated assurances of said company that it intended to comply with its promises, on down to some time in the latter part· of the year 1894."

"7. Further answering said bill, this respondent states, charges and avers that at the time of said sale to him, as set up in said bill of complaint, that the said company had not caused its said lands to be mapped and plotted, and a map of the same filed in the office of the judge of probate of said county, as required by the provisions of the statute of Alabama. This respondent admits that, on the 4th day of January, 1890, the said company filed what purported to be a map of its lands which it had caused to be laid off into lots in the town of Piedmont, Alabama, and the same was placed on record, but this respondent avers that such map was not such as is required by the laws of Alabama in this, that the property had not, at that time, been surveyed by a

[Allgood v. Bank of Piedmont.]

competent surveyor, and did not give the bearings and length of each boundary of each lot and block, and bearings, length, width and name of every street contained therein; and that said plat or map failed to show the relation of the lands so platted to the government survey. But respondent avers that, before the sales to him, that said company had another and perfect map made, and from said new map the sales were made to. him, and he avers that the said new map is one that has been universally used by said company, and that the same was never filed, as required by law in the office of the probate judge of said county, and has not been filed and recorded to this day; that said map and plat was very different from the one that is filed, and the lots are different and differently located, and the streets are also differently located, and that said map and plat and survey was entirely new and different from the one filed, and this respondent insists for this reason, that said sales to him, and the notes upon which this suit is based, are void, because of the failure to comply with the laws of Alabama, in such cases made and provided.''

The complainant in the original bill and respondent in the cross-bill denied each of the allegations contained in the amendments, and interposed a demurrer to the amended cross-bill upon the same grounds as were filed to the original cross-bill, and the following additional grounds: ''5. For that it appears from said cross-bill, as amended, that the complainant therein delayed. to execute his alleged right to rescind the contract of purchase with the hope that a favorable chance might profit him, but was unwilling to risk an unfavorable one. 6. For that it does not appear from said cross-bill as amended that there is any sufficient reason why the complainant therein should not pay his notes described in the original bill.'' This demurrer was sustained, and the respondent further amended his cross-bill by adding the following paragraph: ''6½. This respondent further states and charges that, in pursuance of its said promises and guarantees, and in execution of the same, the Piedmont Land & Improvement Company sometime in the year 1892, completed an electric light plant, which was one of the industries promised, and completed along about the same time a commodious hotel, which was also promised, and also a bank building and started a

bank; that in further execution of its promises and guaranties, sometime in the year 1892 or 1893, they secured the erection of a water works system for the said town of Piedmont; that sometime in the spring of the year 1893, they started a crew of hands to work at the uncompleted furnace which was begun in the very height of the boom period, and which they had promised from time to time would be completed; that sometime in the said year 1893, the said company had the grounds laid off for the erection of the promised and guaranteed car works, and promised those to whom it had sold its lots that the car shops of the E. & W. R. R. of Ala. would be moved to Piedmont, in execution of its promises as to the construction of a car works; that repeated promises have since been made as the completion of the furnace since that time.

"Now respondent avers that he was misled into remaining quiet all these years, hoping and expecting that said company would comply with its promises and guaranties as to industries which it seemed to be slowly doing, and respondent avers that it was these repeated promises and acts of the said company, that led him to believe that it intended to fully comply with its promises and guarantees which led respondent to make the purchase of said lot. This respondent further states and charges as aforesaid, that there was no definite time fixed by said company for the completion of said promised industries, and as it seemed to be slowly complying with its said promises and guaranties, this respondent made no complaint and waited patiently to see the outcome without making any offer to rescind said contract; which he avers he would have done but for the repeated acts and promises of the said company to finally fully comply with all its said promises and guaranties as to industries for said town; and this respondent says that he thinks he was not called upon, in view of the facts and circumstances of this case, to repudiate said sale until the filing of this cross-bill."

The complainant in the original bill denied specifically all of the allegations contained in this amendment, tending to show misrepresentation, and re-interposed to said cross-bill, as amended, the demurrers previously filed, together with the following additional grounds: "8. For that it appears from said cross-bill as amended that

the complainant therein only offers to rescind his contract of purchase when it is apparent that it is not profitable for him to longer abide it. 9. For that it does not appear from said cross-bill, as amended, that the complainant therein offered to rescind his contract of purchase within a reasonable time after he knew of the alleged fraudulent acts of said land company."

On the submission of the cause on the pleadings and proof, the chancellor decreed that the respondent was not entitled to relief prayed for in his cross-bill, and ordered the same dismissed; and that the complainant was entitled to the relief prayed for, and ordered accordingly. The respondent appeals from this decree, and assigns as error the rendition of said decree.

S. D. G. BROTHERS and W. J. BROCK, for appellant. 1. A contract procured by a false and fraudulent representation of a material fact, of which the one party was ignorant, constituting an inducement to the contract, upon which a party relies and has a right to rely, and without the existence of which the contract would not have been made, authorizes a court of equity to rescind.—1 Brick. Dig., 686, § 682, and authorities; *Howle v. North Birmingham Land Co.*, 95 Ala. 385; *Goree v. Clements*, 94 Ala. 337; *Orendorff v. Tallman*, 90 Ala. 441. It is admitted that the general rule is, that a party seeking to rescind a contract on the ground of fraud, must act with reasonable promptness and diligence in the assertion of his remedial rights; long acquiescence, unnecessary and unexplained delay, for an unreasonable time, after the discovery of the fraud, will bar the equitable relief. What is reasonable promptness, however, depends upon the character and facts of the particular case.—*Foster v. Gossett*, 29 Ala. 393; *Goree v. Clements*, 94 Ala. 337. The true reason upon which the doctrine of laches rests is that "a favorable change ought not to profit him who would not run the risk of an unfavorable one."—*Sheffield L., I. & C. Co. v. Neill*, 87 Ala. 158.

2. Under the peculiar facts shown by the evidence in this case, the offer to rescind came within a reasonable time. The very silence of the company for five years, living in the same town with appellant, and needing the money, was sufficient to mislead appellant into believing that it did not intend to ask for the money unless it

complied with its promises and guarantees. The truth of the promises was guaranteed by the vendor, according to the averments of the cross-bill.—*Joseph v. Decatur L., I. & F. Co.*, 102 Ala. 346.

3. In rescinding a contract for the sale of lands at the instance of the purchaser, the court may decree a lien on the land in his favor for the amount of the purchase money paid.—*McWilliams v. Jenkins*, 72 Ala. 480.

BLACKWELL & KEITH, *contra.*—1. Complainant in the cross-bill unreasonably delayed the rescission of the contract after being informed of the Piedmont Land & Improvement Company's alleged fraud and its inability to carry out its contract. A party must act promptly upon discovering that he has been defrauded into making a contract, if he wishes to rescind the same.—*Goree v. Clements*, 94 Ala. 345 ; *Howle v. N. Birmingham L. Co.*, 95 Ala. 389 ; *Sheffield L., I. & C. Co. v. Neill*, 87 Ala. 158 ; *Masson v. Bovet*, 1 Denio 69.

2. Complainant in said cross-bill failed to offer in said bill to return to the Piedmont Land and Improvement Co. the bond for title, which said company had executed to him. This obligation, the record shows, was outstanding and should have been returned or offered to be returned. "Where property is purchased from one person by another, in which false pretenses or other like fraud enters, the party defrauded may elect to rescind the sale within a reasonable time after the discovery of the fraud. But there can usually be no rescission unless both parties can be restored practically to the condition in which they were before the contract was made. This involves the restitution of whatever of value each may have received under the contract." *Jones v. Anderson*, 82 Ala. 302 ; *Masson v. Bovet*, 1 Denio 69 ; *Kimball v. Cunningham*, 3 Am. Dec. 230 ; *Evans v. Gale*, 45 Am. Dec. 614.

HARALSON, J.—1. The defense attempted to be set up by defendant, in his original answer, so far as the same is made a cross-bill, is without any merit, on the facts presented. The right to rescind a contract because of fraudulent representations, to be available must be promptly asserted. The person who claims to have been misled, "is required, as soon as he learns the truth,

[Allgood v. Bank of Piedmont.]

with all reasonable diligence to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it, and restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligations by a rescission, or refusal to perform on his part. If after discovering the untruth of the representations, he conducts himself with reference to the transaction, as though it were still outstanding and binding, he thereby waives all benefit and relief from the misrepresentation." 2 Pom. Eq. Juris., § 897.

"Fraudulent misrepresentations in the sale of real estate do not confer upon the defrauded party the speculative advantage of being entitled to wait for the rise or fall in the value of property, and then act according to his interest in the matter." He must, as is everywhere held, act promptly on ascertaining the falsity of the representations, and avail himself of the right to rescind, or he loses it. If he takes the risk on a speculative venture, he places himself, as to that matter, on an equality with his adversary, and must, thereafter, hold his peace.—*Howle v. N. B: Land Co.*, 95 Ala. 391; *Goree v. Clements*, 94 Ala. 343; *B. W. & E. Co. v. E. L. Co.*, 93 Ala. 549; *Lockwood v. Fitts*, 90 Ala. 150; *Sheffield L. & I. Co. v. Neill*, 87 Ala. 161; *Ansley v. Bank of Piedmont*, 113 Ala. 467.

2. The contract of sale of the lots in question occurred on the 6th January, 1890. The bill was filed on the 15th August, 1895. It is not pretended, that the defendant ever made any offer to rescind this sale, before he filed his answer and cross-bill in this case,—a period of over five and a half years. He says in his original answer, "that he has not paid any of said notes, and has never intended to pay (them)," on account of the alleged fraud and misrepresentations of the Improvement Company. Again, he states in the last amendment filed to the cross-bill, "that there was no definite time fixed by said (Improvement) Company, for the completion of said promised industries, and as it seemed to be slowly complying with its said promises and guaranties, this respondent made no complaint and waited patiently to see the outcome without making any offer to rescind said contract."

3. The defendant lived in the town of Piedmont, and was a witness of the condition of affairs there,—how well the Improvement Company kept its promises to improve and develop a city, or how far short it fell in doing so. He knew all the while what was going on, and waited patiently for over five and a half years, in the hope that something advantageous in the speculation would turn up for him, before making any offer to rescind, and then in a cross-bill, when this suit was commenced against him. The scheme on his part, as he himself puts it, was a purely speculative venture, wherein he seeks to visit his disappointment on his adversary. His defense, on this branch of the case, even admitting that the representations made by the Improvement Company, were, as he claims, false and fraudulent, is, as we have said, without any merit in a court of equity.

What has been said applies with equal force to section six to the amended answer and cross-bill.

4. Besides, neither in the original answer and cross-bill, nor in any of the amendments filed thereto, did the defendant offer to do equity. He is in possession of the property sold to him, has in his possession his bond for titles, and seeks relief in the cross-bill without ever having offered to put the Land Company *in statu quo* by a rescission of his contract. The cross-bill and each amendment thereto, was demurred to on this ground, and the demurrers were properly sustained. The facts set up in the 7th amendment, even if true, are not available for the relief he seeks, while he retains possession of the lot, and does not offer to do equity.—*Grider v. Amer. Freehold Land Mortg. Co.*, 99 Ala. 281; *Giddens v. Bolling, Ib.* 319; *New Eng. Mortg. Sec. Co. v. Powell*, 97 Ala. 483.

The demurrer to the last amendment, numbered 6½, was not acted on, and must be treated as waived. The allegations therein were denied by the complainant in the original bill,—defendant in the cross-bill. On the hearing, the complainant in the cross-bill offered no proof to sustain the averments of this amendment. The burden was on him to prove them.

We find no error in the decree of the chancery court, and it is affirmed.

Affirmed.