# Romanoff Mining Co. *v.* Cameron.

*Bill in Equity to foreclose Mortgage.*

1. *Equity pleading; not error for chancellor to render decree declaring vendor's lien on a bill filed to foreclose a mortgage.* Where a bill is filed to foreclose a mortgage given to secure

[Romanoff Mining Co. v. Cameron.]

the payment of the balance due upon the purchase money of lands contained in the mortgage, if it should be ascertained that although the mortgage sought to be foreclosed was invalid, but the complainant was entitled to the purchase money, it is not improper for the chancellor to render a decree under a prayer for general relief, declaring a vendor's lien upon the lands described in the mortgage in favor of the complainants.

2. *Rescission of contract at instance of purchaser on ground of fraud; must be promptly made; waiver of right of laches.* The right to rescind a contract because of fraud or fraudulent representations, in order to be available must be asserted with reasonable diligence and promptness, after the ascertainment of the truth; and where a vendee who knowing of the false and fraudulent representations on the part of the vendor makes no offer to rescind the sale on that account until several years afterwards, when the vendor files a bill to foreclose a mortgage given to secure the payment of the balance of the purchase money, the vendor's right to rescind is lost by such delay.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. RICHARD B. KELLY.

The bill in this case was filed by the appellee, H. J. Cameron, against the appellant, the Romanoff Mining Company. It was averred in the bill that the complainant sold to the defendant a specifically described tract of land for which the defendant made a cash payment of a part of the purchase money, and for the balance executed four several notes of $15,000 each, and to secure the payment of said notes, executed a mortgage upon said lands; that the defendant had made default in the payment of the notes, and the prayer of the bill was that said mortgage be foreclosed. There was also a prayer for general relief.

The respondent filed an answer which was asked to be taken as a cross bill, and averred therein that the lands described in the bill and which were sold by the complainant to the defendant were represented to the defendant to be very rich in gold ore, and they were purchased by the defendant for the purpose of mining and milling gold therefrom; that the representations made by the complainant to the defendant induced

them to purchase said lands, and that the defendant relied upon such representations; but that sa:d representations were false, in that said lands did not contain gold ore in any appreciable quantity and were valueless to the defendant; that the defendant had expended large sums of money in trying to develop gold mines, but had found that said lands did not contain gold ore in sufficient quantities to justify the defendant mining it. It was further averred in said answer that the representations as to the lands containing gold ore were knowingly false on the part of the complainant and were made for the purpose of deceiving the defendant and inducing him to make said purchase.

The prayer of the cross bill was that the notes and the mortgage be declared void and delivered up and cancelled.

On the submission of the cause on the pleadings and proof, the chancellor rendered a decree which was as follows: "Upon consideration it is ordered that the complainant is entitled to the relief prayed for in his said bill and that the respondent is not entitled to the relief prayed for in its said cross bill and that said cross bill is hereby dismissed. It is therefore ordered and decreed that complainant has a lien upon the land mentioned in the bill with the appurtenances thereon for the purchase money now due, including principal and interest, which is now foreclosed, and as the amount due complainant is easily computed the court now makes the calucation without referring it to the register, and find the amount due the complainant to be the sum of fifty-two thousand, three hundred dollars." There then follows directions to the register as to how to proceed to sell the said lands. From this decree the respondent appeals, and assigns the rendition thereof as error.

SORRELL & SORRELL, for appellants, cited *Young v. Arntz*, 86 Ala. 116; *Ansley v. Bank of Piedmont*, 113 Ala. 467; *Bailey v. Jordan*, 32 Ala. 50; *Orendorff v. Tallman*, 90 Ala. 441; *Bullock v. Tuttle*, 90 Ala. 435.

[Romanoff Mining Co. v. Cameron.]

W. M. LACKEY, *contra.*—The complainants in the cross bill do not come within the rule in the cases decided by this court for rescinding a contract, even if the pleadings entitled them to such relief. The party asking to rescind a contract must promptly disavow the contract and offer to rescind and put the other party *in statu quo.*—*Ansley v. Bank,* 113 Ala. 467; *Lockwood v. Fitts,* 90 Ala. 150; *Allgood v. Bank,* 115 Ala. 418.

TYSON, J.—It may be conceded that the mortgage sought to be foreclosed by the bill was invalid and yet, the decree of the chancellor declaring a vendor's lien in favor of the complainant under the general prayer for relief, upon the facts averred, was entirely correct, unless the defenses set up in the answer and cross-bill can be held to bar the recovery.—*Joseph v. Decatur Land, Imp. & F. Co.,* 102 Ala. 346. Only one of these defenses is insisted upon here. It is the one predicated upon misrepresentations inducing the respondent to purchase the lands. If it be conceded that this defense is properly alleged in answer, which is made a cross-bill, and that the evidence is clear and convincing on that point, yet, after respondent obtained knowledge of the fraud or became informed of facts and circumstances from which such knowledge would be imputed to it, a delay in instituting judicial proceedings for relief will be regarded as an acquiesence and is a bar to *any equitable* remedy. This upon the principle that "the person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract or abandon the transaction and give the other party an opportunity of rescinding it, and of restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligations by a rescission or a refusal to perform on his own part. If after discovering the untruth of the representations, he conducts himself with reference to the transaction

as though it were still subsisting and binding, he there-
by waives all benefit of and relief from the misrepre-
sentations."—2 Pom. Eq. Jur., §§ 897, 917; *Allgood v.
Bank of Piedmont,* 115 Ala. 418, and cases there cited.

We have but to apply this principle to the facts of
this case to see that the respondent *waived* any *and all*
benefits of and *relief from* the misrepresentations, if
they were in fact made and relied upon as an induce-
ment to the purchase.   On this point the facts are un-
disputed, that after the respondent acquired the deed
in January, 1899, to the land, it, by and through its
officers and agents, went immediately into the posses-
sion of the property and began mining ore from it. The
evidence shows further, as said by counsel for appel-
lant, that after six months spent in developing it at a
cost of over $16,000 "in a vain attempt to find gold in
paying quantities," the respondent only found   the
amount of $194.    This result, it would seem, would be
sufficient without more, to have convinced the respond-
ents that the representations, which are   claimed   to
have been made and acted upon, were false, and im-
posed upon it the duty of repudiating the transaction
and of not conducting itself with reference  to  it  as
though it was subsisting and binding.   But this it did
not do.   It continued to use the property as its own
and as was stated by appellant's counsel placed upon
it all modern improvements, including a chlorinating
plant, at an additional cost of $15,000 and with this
improved machinery another effort was made to find
gold in paying quantities, only to result in failure.
Furthermore, after acquiring all this knowledge, in a
practical way, that the ores did not possess the gold
bearing qualities, which it is contended the complain-
ant represented them to possess and which it is as-
serted induced the purchase, the respondent remained
in possession of the property exercising acts of owner-
ship over it and dealing with it as its own until it was
dispossessed by the complainant in July, 1900.  And
it was not until the answer and cross-bill was filed
(December 6, 1900) in the cause, that any attempt was

made to disaffirm the purchase or to abandon the transaction.    Of course, this attempt can be of no avail, since, after knowledge of the falsity of the representations, the respondent elected to treat the purchase as binding and efficacious.

Affirmed.

