[Hodge & Williams v. Tufts.]

# Hodge & Williams *v.* Tufts.

*Action on Promissory Notes.*

1. *Pleading and practice; how demurrers considered on appeal.*— Where the demurrer to a plea is sustained, but on appeal it is not set out on the record, the appellate court will presume that some grounds of demurrer was specifically assigned; and if the plea is bad, in order to sustain the ruling, the court will presume that the grounds of demurrer showing the vices of the plea were specifically assigned, and the ruling sustaining the demurrer will be approved.

2. *Contracts; breach of implied warranty; right of rescission.*— Where an article delivered under an executory contract of sale does not come up to the warranty, express or implied, the purchaser may rescind the contract by offering to return the article within a reasonable time after the discovery of the defect; but in order to exercise the right of rescission the purchaser must act with promptness; and by his failure to offer to return the property within a reasonable time after discovering the breach of the warranty, or by subsequently dealing with the property as his own, he waives his right of rescission.

3. *Breach of warranty; right of rescission; what constitutes reasonable time; case at bar.*—Where a soda water fountain is sold, to be paid for in monthly instalments, and after the delivery of the fountain the purchaser complains of certain defects therein, two months after knowledge of such defects, during which time the fountain was being used, is a reasonable time within which the purchaser should make his election to rescind on account of said alleged defects; and if, with the knowledge of such defects, he continues to use the fountain several months and makes payments of his notes, there is a waiver of his right to rescind.

4. *Same; same; when no ground of rescission shown.*—Where machinery is sold, to be used for a specific purpose and to be paid for in monthly instalments, and upon the delivery of the machinery the purchaser is notified that it is second hand and had been used by other parties before the sale, and with such knowledge the purchaser, without objection, continued to use the machinery and made monthly payments thereon in accordance with his contract, the fact that said machinery was not new or that it was second hand, does not give the right to rescind the contract, or to avoid the payment of the price of said machinery.

5. *Implied warranty; what constitutes it.*—An implied warranty is not a guarantee that the article or thing sold is the best of its kind, or such as might have been represented at the time of its sale, but

only that such article shall be reasonably suitable for the purposes for which it was intended to be used.

6. *Action for purchase price of property sold; breach of warranty; measure of recovery.*—Where an action is brought upon notes given for the purchase price of machinery sold, and there is shown that there was a breach of warranty on the part of the plaintiff by reason of certain defects in the machinery, the amount due upon the notes sued on, less the sum that it would cost to have the machinery placed in the condition in which it was warranted to be, is the measure of plaintiff's recovery.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. J. M. CARMICHAEL.

This action was brought by the appellee, James Tufts, against the appellants, Hodge & Williams; and counted upon several promissory notes which were given by the defendants to the plaintiffs for the purchase price of a soda water fountain.

The defendants pleaded the general issue, failure of consideration, payment, breach of warranty, and the following special pleas: "7th. On the 7th day of October, 1887, the defendants contracted with the plaintiff, who was a manufacturer of apparatus for the making and dispensing of soda water as a beverage, and as such manufacturer delivered to them, the said defendant, among other things, a fountain and appliances for dispensing said beverage; that after making said contracts the plaintiff delivered to defendants said fountain and said other appliances, and defendants thereupon, but before they had an opportunity of testing said apparatus and said other appliances, as to their suitableness for the purposes for which they were manufactured and sold, executed their several promissory notes, each dated the 28th day of January, 1888, and for the amounts and due respectively. as follows, towit: one for fifty dollars, due March 1st, 1888; one for fifty dollars, due April 1st, 1888; one for fifty dollars, due May 1st, 1888; one for fifty dollars, due June 1st, 1888; one for fifty dollars, due July 1st, 1888; one for fifty dollars, due August 1st, 1888; one for fifty dollars, due September 1st, 1888; one for fifty dollars, due October 1st, 1888; one for ten dollars, due November 1st, 1888; and others for amounts and due as alleged in plaintiff's complaint. Defendants aver that afterward they attempted to use said apparatus for the purposes for which it was furnished, and

[Hodge & Williams v. Tufts.]

the same proved to be and was so defective as to be wholly unsuitable for said purposes, and thereupon defendants tendered said apparatus back to the plaintiff, who refused to receive same, wherefore defendants aver that consideration of notes sued upon has wholly failed.

"8th. For further answer to the complaint defendants aver as if here fully again set forth, all the facts stated in the foregoing plea numbered seven; and defendants further aver that said plaintiff knew at the time of the making of said contract to sell said apparatus that defendants intended to use the same for the purpose of dispensing soda water as a beverage, in the city of Opelika, Alabama, and knowing said fact, caused said apparatus to be shipped and delivered to defendants, well knowing that the same was defective and unsuitable for the purposes for which it was intended. And defendants aver that for the purposes of using said apparatus they caused the same to be erected at a great expense, to-wit, one hundred dollars; that thereafter, upon discovering, as they did, that said apparatus was defective and unsuitable, they made such efforts as they could to obviate said defects and to operate said apparatus, and that pending their efforts in this respect they paid to plaintiff on their contract a large sum of money, as follows, to-wit, four hundred and ten dollars. But defendants aver that they were unable to remedy said defects, and that within a reasonable time after they discovered said defects and their inability to remedy the same, they tendered said apparatus back to plaintiff, who refused to receive the same; and defendants aver that on account of said defectiveness and unsuitableness, they, in their efforts to use said apparatus for the purpose aforesaid, incurred great expense and loss of money, to-wit, the sum of four hundred dollars; wherefore defendants say they have been damaged in the sums aforesaid, which they offer to recoup against the said plaintiff.

"9th. For further answer to the complaint, defendants aver that as a consideration for the debt sued on, plaintiff, who was the manufacturer of soda water fountains and appurtenances for the manufacture and dispensing of soda water beverages, and as such manufacturer aforesaid, contracted to deliver to defendants a soda fountain and all appurtenances necessary to the

operation thereof, to be used by them for the purpose of retailing soda water by the drink at their drug store in Opelika, Alabama. But defendants say that the fountain delivered to them by plaintiff was defective and unfit for the purpose for which it was sold to them by plaintiff, and that they notified plaintiff of that fact, and defendants say that by reason of a failure on the part of plaintiff to deliver to them such a fountain as he agreed to do, that they were damaged to the extent of five hundred dollars.

"10th. Defendants aver that on the 7th day of October, 1887, they contracted with the travelling salesman of the plaintiff, who was a manufacturer of soda fountains for the making and dispensing soda water as a beverage, to deliver to them a fountain and appliances for dispensing said beverage ; that according to the terms of said contract with said agent, the fountain was to be new and to comply materially with a plate or drawing of a soda fountain contained in a book or catalogue then in the possession of the defendants. That after the terms of said contract had been agreed on, said agent produced a blank form of contract to be filled and signed by the defendants. But said agent being pressed for time to meet other engagements, had defendants to sign said contract in blank, with the understanding and representation by the said agent that said agent would make out or fill the blank according to the terms agreed upon and send the defendants a copy of said contract as made out. But said agent failed to send said copy to defendants, and also in violation of said agreement, filled said contract or order for a second-hand fountain, and different from the style which they contracted for, and defective and unsuitable for the purposes intended, which said second-hand and defective fountain was delivered to them by plaintiff ; and defendants aver that within a reasonable time after the discovery of said fraud they tendered said fountain back to the plaintiff, who refused to receive same.

"11th. For further answer to the complaint defendants aver, as if here fully again set forth, all the facts stated in the foregoing plea numbered ten ; and defendants further aver that for the purpose of using said apparatus they caused the same to be erected at great expense, to-wit, one hundred dollars ; that thereafter,

24

[Hodge & Williams v. Tufts.]

upon discovering as they did that said apparatus was defective and unsuitable, they made such efforts as they could to obviate said defects and to operate said apparatus, and that pending their efforts in this respect, they paid to plaintiff on their contract a large sum of money, to-wit, four hundred and ten dollars. But defendants aver that they were unable to remedy said defects, and that within a reasonable time after they discovered the defects and fraud, they tendered said apparatus back to plaintiff, who refused to receive the same. And defendants aver that on account of said defectiveness and unsuitableness, they, in their efforts to use said apparatus for the purpose aforesaid, incurred great expense and loss of money, to-wit, the sum of four hundred dollars; wherefore defendants say they have been damaged in the sum aforesaid, which they offer to recoup against the said plaintiff.''

The contract of sale and the facts of the case are sufficiently set forth in the opinion.

The court, at the request of the plaintiff, gave to the jury the following written charges; and to the giving of each of said charges the defendants separately excepted: (1.) ''If the evidence shows that the defendants claimed in July, 1888, that they had rejected the apparatus and held it subject to the order of plaintiffs, and then continued to make monthly payments until November or December, that was evidence tending to show that the claims of defects were unfounded.'' (2.) ''An implied warranty is not that the article or thing sold shall be the best of its kind, or such as might have been represented at the time of the sale, but only that such article or thing shall be reasonably suitable for the purpose for which it was intended to be used.'' (3.) ''Even if the jury should find from the evidence that the apparatus was not suitably fitted for the purpose for which it was sold, then the measure of defendants' damage is the amount necessary to repair the apparatus as it may be shown to be defective.'' (4.) ''If the jury believe from the evidence that defendants were notified by letter or otherwise in the month of March, 1888, that the apparatus shipped them was second hand, and with this knowledge they used said apparatus until some time in the summer of said year, and made payments on the purchase money of said apparatus until November of said year, the acts on part of

[Hodge & Williams v. Tufts.]

said defendants would constitute a waiver of their right to rescind, on account of the property being second hand." (5.) "If the evidence reasonably satisfies the jury that the apparatus as a whole was costly and expensive and was only defective in some minor respects, and they further believe from the evidence that such defects could be remedied and put in such condition as would make the apparatus reasonably suitable for the purposes intended, then the costs of putting same in such condition would be the measure of defendants' damages." (6.) "If the jury believe from the evidence that defendants kept and used the soda fountain and apparatus for three or more months, after they had knowledge of all the alleged defects and fraud complained of, they should find for plaintiff, at least the amount of debt proven, less the value of repairing said defects." (7.) "If the defendants, after they say they rejected the apparatus, rented out a part of it to Mr. Moore, then they can not now say that they rescinded the trade. It is too late." (8.) "Two months or more after knowledge of the defects, if there were defects in the apparatus, would be a reasonable time in which defendants should make their election to rescind on account of said defects." (9.) "If defendants knew of all the defects complained of in March or April, 1888, and with this knowledge kept and used the same until mid-summer of that year or later and paid their notes given for the purchase money until November, 1888, this would be as matter of law a waiver of their right to rescind the contract." (10.) "The defendants can not rescind the contract on the ground that the apparatus shipped them was not new, and had been used by other parties prior to the sale, if they, after being informed by letter or otherwise, that the apparatus shipped them had been used by other parties in 1887, continued to use the same." (11.) "There is no dispute that Tufts wrote Hodge & Williams a letter on the 26th day of March, 1888, in which it was disclosed that the soda fount shipped Hodge & Williams had been used by other parties prior to the sale in question, and that said Hodge & Williams received said letter in due course of mail. Upon this there is no conflict in the evidence; and if the jury are reasonably satisfied from all the evidence that Hodge & Williams made no objection to Tufts on the ground that said soda fount was second hand, then

[Hodge & Williams v. Tufts.]

they would be estopped from avoiding the payment of the purchase money upon the ground that the fountain shipped them was second hand." (12.) "The defendants are estopped from avoiding the payment of the purchase money on the ground that the soda fount shipped them was second hand." (13.) "The court charges the jury that there was no express warranty in this case which the jury can consider, and no representation made by Mr. Lee or Mr. Tufts which would amount to an express warranty can be considered by the jury." (14.) "In ascertaining the extent of damages suffered by defendants, if any, the jury must look to all the evidence to ascertain what it would reasonably cost to put the apparatus in a condition reasonably suitable for the manufacture and dispensing soda water beverages, and if the only evidence on that point is, that it would not cost over $100, then that is the only abatement the defendants would be entitled to, and the plaintiff would be entitled to a verdict for balance of notes and interest." (15.) "The jury may believe from the evidence that defendants signed the contract in evidence, ordering the soda fount from plaintiff, in blank, to be filled out by Mr. Lee afterward, yet if they are further satisfied from all the evidence that Mr. Lee was only a travelling salesman to solicit and forward orders to be filled by Tufts on his approval, then if the jury are further satisfied from the evidence that Tufts received and filled said order in good faith, and afterwards wrote Hodge & Williams a letter on the 26th day of March, 1888, disclosing that said fountain had been in use by other parties prior to said sale, then it was the duty of Hodge & Williams to notify Tufts that their salesman had sold them a new fountain, and if they further find from the evidence that Hodge & Williams failed to inform Tufts, then Hodge & Williams can not avoid the payment of the purchase money on the ground that the fountain shipped them was second hand." (16.) "Under all the evidence in this case, there is but one defense that the jury can consider, and that is the breaches of warranty set up in the defendants' pleas." (17.) "Unless the jury believe from the evidence there was a breach of warranty on the part of plaintiff, then they must find for the plaintiff." (18.) "If the jury believe from the evidence that there was a breach of warranty

[Hodge & Williams v. Tufts.]

on the part of plaintiff, the amount sued for less the sum that the jury ascertain from the evidence it would have cost to have placed the apparatus in the condition which it was warranted to be, would be the amount of plaintiff's recovery."

There were verdict and judgment for the plaintiff. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

JOHN M. CHILTON and A. & R. B. BARNES, for appelants.—1. If the seller who is also the manufacturer, agrees to deliver articles which are to be manufactured or procured by him, and which are to be used by the buyer for a particular purpose, known to the seller, the law implies a warranty on the part of the seller that they shall be reasonably fit for the purpose for which they are to be applied.—Snow v. Schomacker M' f' g. Co., 69 Ala. 111 ; Pacific Guano · Co. v. Mullen, 66 Ala. 582 ; Englehardt v. Clanton, 83 Ala. 336 ; Benjamin on Sales, (3d Am. Ed.) § 657.

2. The buyer has choice of three remedies where the goods delivered are inferior in quality to those warranted by the seller : 1st. He may refuse to accept the goods and offer to return them. 2d. He may accept and bring a cross action (set off or recoupment under our statute) for breach of warranty. 3d. If he has not paid the price he may plead the breach of warranty in reduction of the damages.—Benjamin on Sales, § 894. "In actual practice, the only difficulty which arises in these cases, grows out of controversies whether the buyer has actually accepted the goods and thus become owner. On this point, the cases show, that acceptance does not take place by mere retention of the goods for the time necessary to examine and test them, nor by the consumption of so much as is necessary for such testing ; and it is always a question of fact for the jury whether the goods were kept longer than was requisite to enable the buyer to decide whether he would accept or reject." Benj. on Sales, (Bennett), § 896 ; Okell v. Smith, 1 Stark. Rep. 107.

3. The duty of offering to return the goods or give notice of non-acceptance as soon as the faults, after trial, are discovered, does not apply where the seller, "by

subsequent misrepresentation, induced the purchaser to prolong the trial."—Benj. on Sales, (Bennett), § 900. This, on the plain principle that one can not take advantage of a delay occasioned by his own line of conduct.—Bigelow on Estoppel, p. 570, § 2, note 6, and cases there cited. The general rule that a dealing with the property as one's own, cuts off the right of rescission or repudiation, is further qualified in cases where, in ignorance of the fraud or breach of warranty, or in reliance upon the promise of the vendor to remedy it, the vendor has paid the whole or part of the purchase-money. In such case, he has the right of retention until restitution is made.—*Eagan v. Johnson*, 82 Ala. 233.

GEORGE P. HARRISON, *contra*, cited *Alexander v. Wheeler*, 78 Ala. 172; *Vandiveer v. Stickney*, 75 Ala. 225; *Pacific Guano Co. v. Mullen*, 66 Ala. 682; *Snow v. Schomacker Mfg. Co.*, 69 Ala. 111; *Fleming v. Ussery*, 30 Ala. 282; *Doe v. Godwin*, 30 Ala. 242; 3 Amer. & Eng. Encyc. of Law, 929, 930, 931, 932.

HARALSON, J.—The rule generally is, that a ruling sustaining or overruling a demurrer will not on error be revised, unless the demurrer appear of record.—3 Brick. Dig. 405, § 13. The judgment entry in this case shows, that a demurrer interposed by the plaintiff to the defendants' 7th plea, which demurrer was not set out in the record, was sustained. In this state of the case, we must presume, if necessary, that some grounds of demurrer were specifically assigned, in order to sustain the rulings of the court below.—*Newsom v. Huey*, 36 Ala. 562; *Merritt v. Flemming*, 42 Ala. 234.

The appellants, defendants below, complain here of the action of the lower court in sustaining a demurrer to said 7th plea. The requirement is, that when the record shows a demurrer was sustained to a plea, and the grounds of demurrer are not shown, the defendant on appeal, complaining of the ruling of the lower court in sustaining such a demurrer, must affirmatively show error. Where a demurrer is sustained to a plea, and the pleading is perfect, then of course error is apparent; but, if the plea was bad, and we presume, as we must, in order to sustain the ruling, that the grounds of demurrer showing its vices were specifically assigned, the

ruling sustaining the demurrer will be approved.—*Whitten v. Graves*, 40 Ala. 582. The 7th plea was bad, and, therefore, we presume a proper demurrer to show this was interposed. The case was tried upon pleas numbered 8, 9, 10 and 11, which will be set out in the report of the case.

The bill of exceptions does not set out all the evidence. That fact is so stated in the bill. Charges were given for plaintiff, to which exceptions were reserved. Appellant contends that some of these charges were incorrect under any conceivable state of proper proof.

We have examined the charges requested and given for the plaintiff. They may be classified for the purpose of their easier disposition. The 1st, 6th, 7th, 8th and 9th, relate to a waiver of defects alleged to have existed in the machinery at the time it was sold to defendants, which were unknown at the time of the delivery of the property, and afterwards discovered. It is unquestionably true, that if the seller of personal property delivers to the purchaser an article that does not come up to warranty, express or implied, the latter may rescind by an offer to return the article in a reasonable time after discovery of the defects ; but in such case, the rule is, that the vendee must act with promptness, and discovering that the property was not such as was contemplated, he must offer to return it. If he neglects to do so immediately upon discovering a breach of warranty, or fraud, but keeps it and treats it as his own, as by offering to sell it or by renting it out, he cannot afterwards reject the contract.—*Barrett v. Stanton*, 2 Ala. 181. "If after discovering the untruth of the representations, he conducts himself with reference to the transaction, as though it was still subsisting and binding, he thereby waives all benefit and relief from the misrepresentations."—2 Pom. Eq. Jur., § 897 ; *Lockwood v. Fitts*, 90 Ala. 150. As was said in *Eagan Co. v. Johnson*, 82 Ala. 237. "When in making an executory contract of sale of personal property, fraud is perpetrated to the injury of the purchaser ; or when there is a warranty, express or implied, that has been broken ; or when the article tendered in performance of such executory agreement does not conform to the stipulation,—either of these furnishes ground of defense to any suit by the seller, brought for the enforcement of such contract. This defense,

however, the purchaser may waive, and does waive, if, after learning the facts, he executes the contract on his part, or does any other act inconsistent with his right to make the defense.''

And again, as was said in *Dill v. Camp*, 22 Ala. 259, ''A party can not in a court of law rescind a contract and yet retain the possession and use of the subject matter of it, as if it were still his. In cases where the parties reside at a distance, after the rescission has been effected by an offer merely to return the property, the vendee, if he retains the possession, can only do so as the bailee of the vendor, until he can receive the orders of the latter as to what disposition to make of it. But he can exercise no control or dominion over the property himself, as being the rightful owner.''

''Unless there was a rescission of the sale, or unless the article purchased was valueless, the purchaser could not resist the payment of the entire purchase money of the defective article. His defense, while he retains the article purchased, extends only to an abatement of the price agreed to be paid.''—*Eagan Co. v. Johnson*, 82 Ala. 238, *supra*; *Jemison v. Woodruff*, 34 Ala. 143.

In this case the contract for the soda fountain was signed by defendants on the 7th of October, 1887. On the 28th January, 1888, the plaintiff, in Boston, Mass., as the evidence tends to show, shipped to the defendants in Opelika, Ala., the property purchased, together with an invoice of the goods in detail, showing the prices of each separate part, aggregating $1,300, the contract price for the whole, together with monthly notes for the same to be signed by defendants and returned, according to contract. On the receipt of the goods in Opelika, the defendants signed and returned the notes to plaintiff. Williams, one of the defendants, testified, that the notes were signed after the machine was opened, and Hodge, the other defendant, that they were signed before it was opened.

The fountain was put up in March, 1888. Afterwards, on the 19th of that month, defendants' wrote, that they were disappointed in the apparatus; that the salesman had guaranteed that it ''was all O. K., no breaks or any defects whatever;'' that defendants found cracks that had been glued and bradded, and that they had been mistreated, and closed by saying, ''When your

salesman comes around again, we intend to have a set-
tlement.   Send us by mail one name for syrup—there
was one lost off or not put in when shipped.   We think
it was strawberry.''   There was evidence tending to
show that the cracks complained of, except one, were
natural seams in the marble, filled with cement to rep-
resent the same color as the marble, and as to the other,
that the marble had been cracked and cemented.   To
this letter the plaintiff replied, protesting that the ap-
paratus was all right, and in substance, that the cracks
or seams were natural, such as existed in all fancy mar-
bles of the kind; that in the cementing, neither the
beauty nor utility of the marble was interfered with;
that they had selected the best machine, and it was a
good one, adding in conclusion, that if he had not suc-
ceeded in convincing them upon the points specified, he
had at least shown them that they were not overreached
or defrauded.   After the defendants received this letter,
they continued to use the machine through the summer,
and paid their notes regularly till December, 1888.   In
the summer of that year, one of the defendants testified
that he wrote two letters to plaintiff, stating that one of
the ice chambers leaked, and the cracks in the marble
were such that they could not use the apparatus to ad-
vantage, and further that it had not come up to repre-
sentations, and unless they made some satisfactory ad-
justment, they would pay no further, and requesting
that Mr. Lee, the agent, be sent out to make some ar-
rangement with them concerning it.   These letters
plaintiff testified he never received.

More than twelve months, then, after the purchase of
the fountain, and after the plaintiff had used it for a
season; now and then from the first complaining that
there were defects in it; with a positive denial by plain-
tiff from the beginning, that these complaints had any
foundation in fact, and with not a word from him, so
far as appears, to mislead defendants or induce them to
a further trial before offering to rescind, and having
paid the monthly notes, meantime, to December 1, 1888,
the defendants, on the 15th November, 1888, wrote to
plaintiff, stating that ''The soda apparatus and genera-
tor we agreed to purchase from you, and for which you
have our notes, is here subject to your order.   You
agreed to give us apparatus in perfect order.   It has

[Hodge & Williams v. Tufts.]

leaked from the time we first began using it, making it impossible to pack ice in the fountain. We have worried through the season, lost money but paid payments promptly—notwithstanding you have failed to comply with your part of contract,'' &c. Other letters passed between the parties, on the part of defendants complaining of leaks in the machine, and on the part of plaintiff refusing to concede that any of the complaints were well founded. In March, 1889, the defendants again wrote proposing an exchange of the fountain for another at a fair price, and asking plaintiff to send his agent out to represent him in the matter. The plaintiff replied that he would do so at once, and the evidence shows, that the agent came to Opelika in October, 1889, and examined the apparatus and left without making any proposition for an exchange. It is further shown, that in 1889, one of the defendants proposed to sell the apparatus to another party, and in 1891, after this suit was instituted, they permitted one Moore to use temporarily two of the copper receptacles of the fountain for soda, for which Moore agreed to pay them. We are unable to conclude that either of these charges were incorrect as applicable to the evidence in the cause. If the facts hypothesized in them were true, the defendants waived the defense of a rescission such as they claim. They are entirely inconsistent with the plea of rescission on account of the alleged defects.

There was no error in giving charges 4, 10, 11, 12 and 15. It is an uncontroverted fact, that on March 26th, 1888, the plaintiff wrote to defendants in which he made known to them, that the fountain sent to them was a second hand machine. In it he stated distinctly, that a firm had used this apparatus before it was sent to defendants, and had it with the same seams and cementing, and had exchanged it with plaintiff for a large one. If the facts hypothesized in these charges were true, the defendants could not set up as a defense that the apparatus was second hand.

There was no error in giving charge 13. There is an entire absence of any evidence showing an express warranty of the quality of the machine when sold by plaintiff.

The second charge is a correct statement of the rule as

[Steiner Bros. v. First National Bank of Birmingham.]

to the effect of an implied warranty in the sale of an article of personal property.

The 16th and 17th charges were, under the evidence, proper instructions. Under the uncontroverted facts, there was no rescission of the contract, and nothing remained to be considered but the fraud and breach of warranty set up in defendants' pleas.

Charge 18, as applicable to the facts of this case, correctly states the rule as to the measure of damages in case of a breach of warranty. The actual proximate injury sustained from the breach is the general rule of damages. This would include such expense as was reasonably necessary to repair the articles sold, or put them in the condition they would have been in, if there had been no defects.—*Snow v. Schomacker Man. Co.*, 69 Ala. 119. Charges 3, 5 and 14, for the same reasons, were free from error.

Affirmed.