# Postal Telegraph Cable Company *v.* Hulsey.

### *Action by Employe against Employer for Personal Injuries.*

[Decided Nov. 19th, 1901; rehearing denied Feb. 5th, 1902.]

1. *Employer's Liability Act; pleading under subdiv. 2 of Act, for negligence of superintendent.*—Where an employe sues his employer for personal injuries received while engaged in felling or removing trees in the course of his employment, a count of the complaint which ascribes such injuries to the negligence of defendant's superintendent, having superintendence over plaintiff and his work, whilst in the exercise of such superintendence, in that such superintendent "ordered and directed plaintiff to chop and fell a tree upon which another tree had lodged, and told plaintiff that he would watch for him and let him know when it became necesary to leave the place where he was working, so as to avoid danger from the falling of said tree or trees, and negligently failed to give plaintiff such notice," states a good cause of action under subdivision 2 of section 1749 of the Code, and is not demurrable for failure to show a duty owing to plaintiff by such superintendent, or for failure to show facts constituting negligence, or for failure to state facts which would be necessary under subdivision 3 of the statute, *e. g.*, that plaintiff was bound to conform to such order or direction, or that his injuries resulted from his having so conformed.

2. *Same; averment of duty owing to plaintiff.*—A count which shows that defendant's superintendent put plaintiff to work at felling a tree upon which another tree was lodged, and told him that he would watch and notify him when it was necessary to leave, which he negligently failed to do, avers facts from which a duty arises, and is not demurrable.

[Postal Telegraph Cable Company v. Hulsey.]

3. *Same; averment of facts constituting negligence.*—Such a count is not subject to demurrer for failing to show with reasonable certainty in what the negligence complained of consists.

4. *Same; proximate cause of injury.*—Such a count, expressly ascribing the injuries to the superintendent's negligence as alleged and concluding that "plaintiff went to chopping on said tree and continued to chop thereon until it fell on him, inflicting the injuries aforesaid," shows that the negligence of such superintendent was the proximate cause of the injuries.

5. *Same; patent dangers; promise to give warning of.*—A count ascribing plaintiff's injuries to the falling on him of a tree, which he was felling under directions from his foreman, does not show that the danger of the work was as patent to him as to his foreman, when the count further shows that the foreman promised plaintiff to keep watch and notify him when to flee from danger.

6. *Same; alleging superintendence; negligence of fellow-servant.*—A complaint is not demurrable, as failing to show superintendence vested in the alleged negligent employe or as failing to show that he was not a fellow-servant with plaintiff, which shows that he was in defendant's employment, and was foreman or superintendent, having in charge or superintendence the plaintiff and the other hands working in connection with him, and having superintendence over the cutting and felling of trees, which superintendence had been entrusted to him by defendant.

7. *Demurrer, ruling on; presumption on appeal.*—Where the judgment entry shows that a demurrer to a plea was sustained, and the demurrer is not set out in the transcript, the Supreme Court will presume, on appeal, that some ground of the demurrer, specifically assigned, reached the vices of the plea, if the plea is bad, and will sustain the ruling of the lower court.

8. *Assumed risks; obvious danger; sufficiency of plea.*—A plea which avers that there was obvious danger in chopping on the tree, the falling of which injured plaintiff, and that plaintiff assumed the risk of so chopping, is not in full answer and presents an imperfect issue to a complaint by an employe against his employer for the negligence of the superintendent, consisting in putting the employe at work in felling the tree and failing to give notice of danger, according to promise; as the employe might well have been induced by the promise to assume the risk.

9. *Contributory negligence; general affirmative charge.*—Where a plea of contributory negligence avers that plaintiff contrib-

[Postal Telegraph Cable Company v. Hulsey.]

uted to the injuries by "negligently moving in the direction in which one of the trees was leaning, so that said tree fell on him, when by moving in another direction he would have been safe from injury," and the evidence shows that plaintiff was injured while felling a standing tree, against which another tree had fallen and was leaning, and that only the leaning tree fell on plaintiff, and that plaintiff when injured was not moving in the direction in which the tree was leaning,—the averments of the plea are not proven so as to justify giving the general affirmative charge for the defendant.

10. *Negligence; general affirmative charge, when properly refused.* Where an employe seeks to recover for the negligence of his employer's superintendent in putting plaintiff to work at felling a standing tree, against which another tree had fallen and was leaning, and in failing to keep a lookout and warn plaintiff (as he had promised to do) in time for him to escape from the falling tree, and the evidence is conflicting as to whether the superintendent gave any warning, and, if so, whether it was timely, the general affirmatively charge for defendant cannot be given.

11. *Contributory negligence; general affirmative charge, when improper.*—Where a plea of contributory negligence alleges that "plaintiff undertook to fell a tree on which another tree had lodged, which undertaking was obviously dangerous and known to plaintiff to be dangerous," and that he "failed to use due care and diligence to save himself from injury, but contributed thereto by moving in a direction which was dangerous, when there was a safe way for him to go at the time said lodged tree began to fall," the general affirmative charge for the defendant is improper, where the evidence shows that the work undertaken was not unusual, but such as often occurred without injury to anyone in its necessary performance, and that, although the work was attended with some risk, plaintiff undertook it in the line of his duties, by order of his superior, who promised him to watch and warn him of the first indication of danger (which promise some of the evidence showed he failed to keep). The plaintiff had a right to rely on the superintendent's keeping his promise.

12. *Same.*—The general charge for defendant under such a plea cannot be justified on the ground that the warning was unnecesary and that plaintiff, without it, understood his peril and fled as soon as he could have done, had

he had the warning,—where there was evidence tending to show that the warning was not given as soon as the superintendent saw the tree begin to sway or lean.

13. *Same; sudden peril or emergency as affecting.*—Where an employe finds himself in a position of great and impending peril, against the approach of which his superintendent had promised (but failed) to give him timely warning, he is not chargeable with contributory negligence, as matter of law, in acting without judgment or wildly, by running in the wrong direction.

14. *Assumed risks, what are not.*—Although an employe assumes such risks as are ordinarily incident to the service he undertakes to render, he does not asume extraordinary risks caused by the negligent breach of duty on the part of the employer.

15. *Charge of court, when error is not reversible.*—Where a part of the court's general charge, to which exception is reserved, is connected with other parts on the same subject, material to and in elucidation of it, the court will consider such portions of the charge together, and will not reverse for error in a disconnected part.

16. *Same; exception to two or more paragraphs.*—Where an exception is reserved to two or more paragraphs of a charge, each must be erroneous to justify sustaining the exception.

17. *Charges, when will not be considered*—.Charges refused, not insisted on in argument, will not be considered by the court.

18. *Damages; proximate consequences of injury.*—Where one's leg is broken as a result of another's negligence, and after same is set and while the injured person is confined to his bed, he rebreaks it in turning on his bed to keep from vomiting, the rebreaking is a natural result, or one liable to happen from the first break, having immediate and causal connection therewith.

APPEAL from Birmingham City Court.

Tried before Hon. W. W. WILKERSON.

Action by Robert T. Hulsey, against his employer, Postal Telegraph Cable Company, for personal injuries, under subdivision 2 of the Employers' Liability Act (Code, § 1749). The opinion states the material facts, as regards the pleading and evidence. The charges referred to in the opinion as having been refused to defendant, in addition to the general affirmative charge, are as follows: (1.) "If the jury find from the evidence that

Hulsey could have taken a course free from danger, but took the course most dangerous, he is not entitled to recover." (5.) "If the jury find from the evidence that Hulsey could have taken one or more directions and could thereby have escaped, but failed to do so, but took a direction that was fraught with danger and by so doing was hurt, he is not entitled to recover." (8.) "If the jury find from the evidence that there was one or more ways open for escape free from danger and that the plaintiff knew this or by the exercise of ordinary prudence and care could have known it, and if they further believe from the evidence there was one or more ways by which, if the plaintiff attempted to escape he was liable to be hurt, and if they further find from the evidence the plaintiff undertook to escape by a way which was dangerous, when there was no reason for his taking such course, and was thereby hurt, then he contributed to his own injury in such way as would bar or prevent recovery." (11.) "In the absence of orders from Cobbs as to what direction Hulsey should run, it was the duty of Hulsey to run in the safe direction, if the jury find from the evidence there was a safe way to run." (15.) "If the jury believe from the evidence that Hulsey received notice by the screaching of the tree that the tree was about to fall at the time Cobbs did, and if Hulsey, acting on the notice received by him, immediately started to run and was hurt, then it cannot be said that Hulsey's failure to receive notice from Cobbs to run conduced proximately to his injury and the plaintiff cannot recover." (X.) "The jury cannot find a verdict for the plaintiff if you believe from the evidence that the plaintiff's injury was caused in part by his own negligence and that such negligence on his part proximately contributed to his injury, and it was the duty of the plaintiff to use due diligence in trying to get out of danger when he heard noise indicating that the tree was falling and in getting out of the way to take the safe way, if the evidence shows there was a safe way, and if he failed to get out of the way by taking the safe way, and because of such failure was injured, he cannot recover." (O.) "If the jury find from

the evidence that there was one or more ways open
for escape free from and without danger, and that the
plaintiff Hulsey knew, or by the exercise of ordinary
care or prudence could have known this, and if they
further find from the evidence there was one or more
ways by which, if the plaintiff attempted to escape, he
was liable to be hurt, and if they further find from the
evidence that the plaintiff undertook to escape by a
way which was dangerous and thereby was hurt, then
he contributed to his own injury in such way as would
bar or.prevent a recovery." (S.) "The court charges
the jury that if they find the plaintiff re-broke his leg
by reason of vomiting from an attack of colic, or from
any other reason, the plaintiff is not entitled to recover
damages of the defendant for any injury resulting from
the re-breaking of the leg." The motion for a new trial
was based upon the action of the court in refusing the
above-quoted charges. There were verdict and judgment
for plaintiff for $7,500, and defendant appeals.

J. J. ALTMAN, for appellant.—(1.)   The plaintiff as-
sumed the risk of chopping on the tree, it being an ob-
vious danger.—*Allen's Case*, 99 Ala. 359.   (2.)   De-
fendant was entitled to the general affirmative charge.
*George's Case*, 109 Ala. 245; *Holland's Case*, 87 Ala. 708;
*Holburn's Case*, 84 Ala. 137; *Orr's Case*, 91 Ala. 554;
*Brumley's Case*, 95 Ala. 399; *Richie's Case*, 99 Ala. 358;
Wood's Master & Serv., § 335; *Perry v. Marshal*, 25
Ala. 659; 1 Thomps. on Neg., 951, 979; Shearman & Redf.
on Neg., § 203; *L. & N. R. R. Co. v. Boland*, 96 Ala.
632; *L. & N. R. R. Co. v. Banks*, 104 Ala. 508; *L. & N. R.
R. Co. v. Stutts*, 105 Ala. 376; *B. Ry. & E. Co. v. Allen*,
99 Ala. 359; *G. P. Ry. Co. v. Davis*, 94 Ala. 307; *Eu-
reka Co. v. Bass*, 81 Ala. 201; *Schlaff v. L. & N. R.
R. Co.*, 100 Ala. 377; *Chewning v. Ensley Ry. Co.*, 100
Ala. 493.   (3.)   The rule that where a person acts wildly
or rashly in the presence of immediate danger, he is
not chargeable with contributory negligence as matter of
law, does not apply where he is brought in the presence
of danger by his own contributory negligence.—Bailey
on Personal Injuries, § 1153; 7 Am. & Eng. Ency. Law
(2d ed.), 401.

LANE & WHITE, *contra*, cited *Holland v. R. R. Co.*, 91 Ala. 444; *Farmer's Case*, 97 Ala. 141; *McCauley's Case*, 93 Ala. 357; *Woodward Iron Co. v. Andrews*, 114 Ala. 243; *R. R. Co. v. Pearson*, 97 Ala. 211; *Burton's Case*, 97 Ala. 240.

HARALSON, J.—1. This action, for personal injuries, was brought under subdivisions 2 and 3 of section one of the Employer's Liability Act.—Code, § 1749. On the former appeal (115 Ala. 193) it was correctly said, "The complaint, in the first three counts, is upon subdivision two, and, in the fourth and fifth counts, upon subdivision three of the Employer's Liability Act. The three counts in the first class, all show by proper averments, that one Frank A. Cobb was, within the meaning of the statute, entrusted with superintendence ,and that the plaintiff's injury occurred by reason of negligence on his part, whilst in the exercise of such superintendence. They show that defendant was engaged in building or equipping a telegraph line, removing trees, erecting poles, wires, etc., and that plaintiff, an employe, was injured by a tree falling on him, in the prosecution of this work, under the superintendence of Cobb."

The court indulged a criticism of count one, in that, although the count is expressly based upon the negligence of Cobb, in the exercise of superintendence, under the second subdivision of said act, yet the wrongful act charged was the negligent giving of an order, for which subdivision three provides, without alleging that plaintiff was bound to conform to the order. To this count a general demurrer was interposed, the overruling of which, on that account, was here sustained, the court stating that it would, "by the allowance of intendments, refer the negligence charged, to the second subdivision, under the general averment of negligence, in the exercise of superintendence." When the case returned to the city court, the count was amended, by striking out the averment of the wrongful act charged in the negligent giving of an order, as provided by said subdivision three, to which plaintiff was bound to conform, and inserting in lieu thereof that said Cobb "told plaintiff

[Postal Telegraph Cable Company v. Hulsey.]

that he would watch for him, and let him knew when it became necessary to leave the place where he was working so as to avoid danger from the falling of said tree or trees, and said Cobb negligently failed to give plaintiff such notice; and plaintiff avers that he went to chopping on said tree and continued to chop thereon, until it fell on him inflicting the injuries aforesaid," etc. This averment cured the defect for which the count was criticised by the court, and brought it within the provision of said section two,—good against the demurrer interposed to it.—*Postal Tel. Co. v. Hulsey, supra.*

2. The defendant's counsel in brief say that the several counts of the complaint are so similar, and many of the grounds of demurrer being the same to each count, we submit what we "have to say on the demurrers as a whole." In other words, the assignments of error as to the overruling the demurrers to the several counts are not separately considered by counsel, but they urge the same objection to each. These grounds as grouped and urged are:

1st. That it is not shown or averred in any of the counts that there was any duty resting on the defendant, or on Cobb, to keep watch or give warning or notice to plaintiff while so employed. This is a misconception of the statements of the several counts, which aver that Cobb, the superintendent, put plaintiff, who was subject to his instructions, to chopping upon a tree upon which another one had fallen and lodged, and when he put plaintiff to chopping, told him he would keep a lookout for him and give him notice when it would be necessary for him to leave, which he negligently failed to do, in consequence of which he was injured. Under such averments of facts, the duty to give the notice arose, as plainly as if it had been so averred. When the facts out of which a duty arose are averred, it is sufficient without averring the legal conclusion that the duty existed.—*L. & N. R. R. Co. v. Marbury L. Co.*, 125 Ala. 237.

2nd. It is insisted on demurrer that the counts in the complaint failed to show or aver with reasonable certainty, in what the negligence complained of consists. This is another misconception of the counts. They each

show that when Cobb put the plaintiff to cutting down the tree, on which another had lodged, he promised him he would watch the tree and give him timely notice when it became necessary for him to leave off chopping and get out of harm's way; that Cobb failed to give such; notice; that the tree gave way and leaned from its upright position, and allowed the lodged tree to fall on and injure plaintiff. This seems to be a very clear statement of the negligence complained of.

3rd. Objection is made that it does not appear by averment or otherwise that the failure of Cobb to watch the tree, or to give warning or notice was the proximate cause of the injuries to plaintiff. It is submitted, however, that the counts, in so many words, set up the negligence of Cobb as the cause of the injuries.

4th. The fourth ground insisted on,—that the danger of chopping on the tree was as patent to plaintiff as to Cobb or any one else,—is without merit. The counts do not show such a fact, assumed in the objection, to be true. The promise of Cobb to keep watch and give warning when to flee from danger, negatives the assumption that the danger was as obvious to plaintiff as to Cobb. The very fact that it was not so obvious to plaintiff as to Cobb, gave rise to Cobb's promise to keep watch and give warning.

5th. The fifth objection is that it is not shown, in the fifth count, that there was any superintendence vested in Cobb; that it fails to show any negligence in Cobb in ordering plaintiff to chop the trees, and fails to show he is not a fellow servant." These objections are in plain contradiction of the averments of this count, which states that plaintiff was an employe of defendant; that Cobb was in the service and employment of defendant, and was foreman or superintendent, having in charge or superintendence, the plaintiff and the other hands working in connection with him, and also that he had charge and superintendence over the felling and cutting of trees along defendant's said line,. which said superintendence had been entrusted to him by the defendant, and, like the other counts, avers the negligence of Cobb, and the facts constituting the negligence.

There was no error in overruling the demurrers to the several counts of the complaint.—*Postal Tel. Co. v. Hulsey, supra.*

3. Pleas A. B. and C. are the general issue. A demurrer, as shown by the judgment entry, was sustained to Plea E., but the demurrer is not set out in the transcript. When this is the case, the appellate court will presume some ground of demurrer was specifically assigned; and if the plea is bad, in order to sustain the ruling, the court will presume that the grounds of demurrer showing the vices of the plea were specifically assigned, and the ruling sustaining the demurrer will be sustained.—*Hodge v. Tufts,* 115 Ala. 366.

It is manifest the plea is bad. The fact that there was obvious danger in chopping on the tree, and that plaintiff assumed the risk of so chopping, is not a full answer to the complaint which avers that plaintiff was put to chopping on the tree by his superintendent, Cobb, on the promise of the latter, "that he would watch for him, and let him know when it became necessary for him to leave the place where he was working, so as to avoid danger from the falling of said tree or trees, and said Cobb negligently failed to give plaintiff such notice," etc. The plaintiff might have known there was danger to chop and fell the tree, with another lodged on it, which might fall on and injure him, when the standing tree began to lean and fall, unless some one watched to give him notice when it began to do so; but with the promise on the part of the superintendent, who directed him to fell the standing tree, that he would stand guard and watch for him, and give him notice when to escape the danger, he might well have been induced thereby to assume the apparent risk, with assurance that he could safely escape, if his superintendent faithfully fulfilled his promise. As stated, the plea does not answer the entire complaint, and presented an imperfect issue thereon.

The case was tried on the pleas of the general issue and on issue joined on pleas D. and F. The last are pleas of contributory negligence of the plaintiff, and counsel for defense state that they are substantially the same. Plea D. sets up, "that while cutting down a tree

on which a part of the weight of two other trees were resting, and when the tree on which he had been cutting gave indications of falling, the plaintiff negligently moved in the direction in which one of the trees was leaning, so that said trees fell on him, when by moving in another direction, he would have been safe from injury, and defendant avers that by so moving in the direction in which said tree was leaning, he placed himself in danger, and by so moving, he negligently contributed, as defendant avers, proximately to his own injury."

It is insisted that the facts of this plea were proved without conflict in the evidence, which justified the giving of the affirmative charge asked by the defendant and refused. Two facts are averred, however, to say nothing more, which refutes this proposition. It is averred in the plea that "said trees fell on him," the plaintiff,—reference being had to the standing tree, and the two others, which rested on this tree. The proof shows, without conflict, that the standing tree did not fall, and plaintiff was injured by one tree alone,—the one which had lodged on the standing tree, and which, when the standing tree leaned as if to fall, slipped from its fastening and fell on the plaintiff. The other fact averred is, that by moving in the direction in which said (standing) tree was leaning, he placed himself in danger. The evidence shows, without conflict, that plaintiff retreated, west, from the tree on which he was chopping, which tree was being chopped to throw it southward, and when it leaned, as if to fall, it leaned in that direction.

The plea marked F. is that "plaintiff undertook to chop and fell a tree on which another tree had lodged, which undertaking was obviously dangerous and known to be dangerous to plaintiff; and defendant avers that the plaintiff failed to use due care and diligence to save himself from injury, but contributed thereto by moving in a direction which was dangerous, when there was a safe way for him to go at the time said lodged tree began to fall, and by reason of plaintiff's moving in such dangerous direction, said lodged tree fell on him, and

he was injured." That this plea was not proved without conflict, will hereafter more fully appear.

· 4.   The evidence on both sides shows that Cobb was in superintendence of the work and had control of the plaintiff and his co-employes, and, at the time, was in the exercise of his superintendence.  The plaintiff, with two other employes were directed by Cobb, to cut down a green pine tree, standing near the telegraph line. Another green pine, which stood on the north side of this tree, about twelve inches in diameter at the butt, had been cut down and lodged about 40 feet from the ground, in a fork of the standing tree, where a limb branched out from its body,—some ten or fifteen feet of the top of the lodged tree, extending beyond this fork, on the south.   After this tree was thus lodged, and in order to dislodge it, and bring it to the ground, they cut another pine tree, of good size, which stood to the east of the standing tree, and threw it on the lodged tree, some twenty feet from the ground, but it failed to knock down the tree that was lodged, but itself lodged on the other tree that was lodged.   With the three trees in this position, the superintendent, Cobb, ordered the plaintiff and two other employes, Kimble and Reed, to cut down the standing tree, so that the three trees would be felled together, to the ground.   Kimble and Reed took position to chop, and did their chopping, on the north side of the standing tree, the one with his back to the east, and the other with his back to the west, one cutting right, and the other left-handed.  The plaintiff stood on the south side of the tree, with his back to the west, and there did his chopping.  The tree was cut by plaintiff with kerf on the south, with the view of throwing it in that direction.   These three choppers testified, and it is not disputed by defendant, but admitted by Cobb, that when he put them to cutting on the tree, he told them that he would watch or keep a lookout, and give them warning when to get out from, or escape, danger.  Kimble testified that if Cobb gave any notice that the tree was about to fall, he did not hear him; that he might have given it, without his hearing it, but he was listening out to hear, but did not hear him.  Reed testified, on the same subject, "A man standing like Cobb

was, 40 or 50 feet away, on the north side, could tell by looking at the top of the tree when it was going to fall, before I could tell anything about it, at the bottom. Mr. Cobb didn't give me any notice at all about that." The witness was asked, "Did Cobb give you any notice that the tree was falling, or going to fall?" Answer, "No, sir; he did not." On the cross he was asked, "Did you say, that Cobb didn't give you any notice, or do you say that you didn't hear him give you any notice?" A. "No, sir; he never gave me any notice. I know he didn't say anything about running, or anything of that kind. I say he didn't give me any notice. I swear positively he did not say anything about running. I know he didn't say it." When asked again, if he had not said, he did not have the notice to run, he replied, "Of course, I did not hear it. I mean that he did not give it."

As to the question of notice, the plaintiff testified: "The lodged tree fell while I was chopping on the standing tree. Mr. Cobb did not give any notice that it was going to fall. He did not say anything to me at all, after I went down there and commenced chopping, before the tree fell. The first thing that attracted my attention that the tree was going to fall, or anything like that, I heard something like a screeching or noise or scraping or something of that kind up the tree, and I remember making one step to get out of the way. I couldn't tell which tree was going to fall. I remember making one step to get out of the way. I whirled one step to the west, and as I did, the tree caught me. * * * When I heard the screeching, if anybody had hollered to me, I couldn't have run away quicker than I did."

Kimble further testified that the first knowledge he had that the tree was falling, or going to fall, he heard it slip above him, and it fell just as quick as it could fall 40 feet, that he whirled and ran east as soon as he heard this noise; that the standing tree had been cut some four or five inches on each side, and that a tree cut in that way would show at the top that it was swaying or swinging, when it would give no such indications at the butt, where it was being chopped; that

Cobb or any one else, standing where he was (some 40 to 60 feet away from the tree) at the road, and there was a gradual movement of the standing tree, south, could tell the swaying of 8 or 10 inches of the standing tree; that any man if watching for it, could see that the lodged tree, if it kept slipping, was getting shorter and shorter. He further testified that if plaintiff had stood still, or gone east, he would not have been hurt, as the lodged tree fell some six feet west from the one standing. He also testified that when he heard the noise in the top of the tree, he could not tell what was going to fall. The evidence shows that this standing tree moved, as if to fall, several feet,—some 5 or 6,—and Cobb himself testified that he did not know how far the leaning tree was from the body of the standing tree, when he hallooed to run, but he would say from 2 to 3 feet.

Reed, as to this matter, testified that when he heard the screeching noise above, he did not wait for Cobb to give warning, but he and the others ran; that he was experienced in such matters, and,—to use his language, "All trees fall different. In a lodged tree like this one was, with 8 or 10 inches sticking over the fork, it would take it a minute or a minute and a half to slide out of the fork, because it would be (or have) 8 to 12 inches to slide, as well as the thickness of the tree at that point. If the standing tree was 20 inches at the butt, it would be at least 12 inches at the fork. The lodged tree couldn't start, right at once. If the standing tree was cut as described, 7 or 8 or 9 inches on one side, and 4 or 5 on the other, if it was cut enough for this (lodged) tree to slip off up there, and then (the standing tree) not fall, it would be liable for it to show it a minute or two beforehand, and maybe three minutes, because, if it was a tree that would spring enough, to let that 8 inches out, and the thickness of the standing tree, and then the (standing) tree not fall, it would be more than a minute, or at least a minute. Now, if it had sprung some and popped off, that would let the tree fall quicker, in either case, (and) he (Cobb) could detect it in time to holler a dozen times for the men to get out of the way. I have done it a many a time after the tree

had popped. And another thing,—when the trees were lodged as these were, no man on earth could tell, which way those trees were going to fall. * * * With a lodged tree against a standing tree, and a cross tree on the lodged tree, the standing tree is liable to fall any way." After the lodged tree fell, the one standing recovered from its leaning of some 6 feet and righting itself, stood upright again.

On the other side, Cobb testified that he kept watch as promised; that the first thing that indicated to him that the tree was going to fall, was that the standing tree began to give way; that he heard no noise at all, that when he hallooed to run, the leaning tree was 2 or 3 feet from the standing tree; that, if he was not mistaken, he told them to run to his left,—east; that he had them cut some bushes down, so that when he hallooed to them to run, they could get out, and he did not utter any other word except "run," at the time the tree began to fall. Other witnesses for defendant corroborated Cobb.

The evidence of the plaintiff is in conflict with Cobb's, that he told the men to run to the east, and is in denial of his having told the choppers to cut the bushes down, so that they could run out of the way.

5. We have, at considerable length, set out the evidence, in order that its application to the averments of the complaint charging negligence in defendant's superintendent, on the pleas of contributory negligence, and on the general affirmative charge and other charges requested by defendant and refused, may appear. From this evidence it will be seen that the general charge as to the question of negligence alleged, and as to plaintiff's contributory negligence, could not have been given. If Cobb did not give the notice of the first approach of danger which he engaged to give, when he ordered the plaintiff and his co-employes to fell the tree, it is admitted, the defendant is liable, unless the evidence establishes negligence of plaintiff, which contributed proximately to his injury. The evidence as to whether Cobb gave timely notice for plaintiff to escape danger, if he did give any notice at all, and on the fact whether he

did, even, give any notice, is in conflict. These questions were properly left to the determination of the jury.

It is urged that plaintiff contributed proximately to his own injury, and the court should have so charged as a matter of law.

In the first place, it is said, plaintiff assumed the risk when he went to do the chopping on the tree. It is shown that the work undertaken was not unusual, but such as often occurred, without injury to any one in the performance of the necessary undertaking of felling trees standing so near to the telegraph line as to endanger it, from their being blown down. That the work was attended with some risk, if due care were not taken in its performance, is not denied. It may be stated as the correct rule ,that an employe assumes such risks as are ordinarily incident to the service he undertakes to render; but he does not assume extraordinary risks, caused by the negligent breach of duty on the part of the employer.—3 Elliott on Railroads, § 1288. That author states the rule thus "The authorities require the conclusion that the employe assumes all the risks of the service in which he voluntarily engages, except such as arise from negligence on the part of the employer, so that in whatever form the question may arise, the general rule must be, that risks of the service shall not be increased or caused by the employer's negligence, but risks not increased or caused by the employer's negligence, are risks of the service which the employe assumes. The question is not danger but negligence on the part of the employer."—3 Elliott on Railroads, § 1290; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368.

In *Birmingham R. & E. Co. v. Allen,* 99 Ala. 359, 372, following the English decisions on their Employer's L. Act of 1880, which ours substantially, though not exactly, follows, it is said: "It would appear as the settled construction of the English courts, that mere 'knowledge is not a conclusive defense in itself. But when it is knowledge under circumstances that leave no inference open but one, viz., that the risk has been voluntarily encountered, the defense is complete;' that 'plaintiff may recover unless the circumstances were such as to warrant a jury in coming to the conclusion that the

plaintiff freely and voluntarily, with full knowldege of the nature and extent of the risk he ran, impliedly agreed to incur it."

Under the facts disclosed, it cannot be said, as a matter of law, that the risk of plaintiff in attempting to fell the tree was not increased by the negligence of superintendent, Cobb, who ordered him to do the work, under promise to watch and warn him of the first indications of danger, or, that he voluntarily assumed it, disconnected with and without reference to, and reliance on the promise of the superintendent.

6.   Defendant's counsel insist that Cobb's promised warning was unnecessary to be given, since plaintiff apprehended and understood his peril, without it, and fled the wrong way as soon as he could have done, even with the warning.   This insistence cannot, under the evidence, as a matter of law, be sustained.   The jury might well have believed, for the fact was open to such an inference, that Cobb saw indications, or might have seen them if performing his duty, of the swaying or leaning of the standing tree, as if to fall, before plaintiff heard the screeching, and that, if he had given the warning as soon as the tree began to lean, the plaintiff might have escaped unharmed.

7.   Again it is said, the plaintiff negligently went in the way of danger, when there was a safe way of escape for him.   It is not denied, if plaintiff had stood still, or had escaped to the eastward, he would not have been injured.   But the plaintiff, from the failure of Cobb, to give the promised warning, if he did so fail,—a question not free from conflict,—found himself in a position of great and impending peril, against the approach of which, as the evidence tends to show, he was looking for warning in time to escape.   He heard no warning from Cobb, as he and the others with him testify, and the first thing he and they knew, he heard a screeching above their heads, indicating to them the falling of the lodged tree, and suddenly they ran to escape the danger.   One exposed to sudden and unexpected danger is not responsible for acting without judgment, or wildly, and whether he so acted, depends materially

upon the facts and circumstances of the case. The proper inquiry is, considering his surroundings at the time, did he exercise such reasonable care and diligence as would be expected of a prudent and reasonable man under similar conditions.—*R. & D. R. Co. v. Farmer,* 97 Ala. 141; *L. & N. R. Co. v. Orr,* 91 Ala. 548. On the former appeal in this case it was said as to a charge requested by defendant,—that "In the absence of orders from Cobb as to what direction Hulsey should run, it was the duty of Hulsey to run in a safe direction, if the jury find from the evidence there was a safe way to run,"—"that the charge made it the absolute duty of the plaintiff to run in a safe direction, if there was one, without regard to the circumstances under which he was called to act, and whether he acted as a reasonably prudent and cautious man would, or might naturally have acted, or not. The plaintiff could not thus be made, absolutely, an insurer of safety in the direction he might take to avoid the danger."

8. The part of the oral charge of the court excepted to is wrested from its connection in what preceded and followed it on the same subject, and of which the excepted portion was a part,—what preceded and followed the excepted part being material to and in elucidation thereof. If necessary to sustain the part excepted to, to consider the immediate connection in which it was said, it would be proper to do so. Thus considered, we find no fault with it. Moreover, the part excepted to consists of two or more paragraphs. Each of them is not bad, which must be the case to condemn the whole. The court, if any portion of it was erroneous, was not bound to separate the legal from the illegal.—*Hawkins v. Hudson,* 45 Ala. 482; *L. & N. R. Co. v. Hurt,* 101 Ala. 36; *Bonner v. State,* 107 Ala. 97.

Charges 1, 5, 8, 11, 15, X, are scarcely insisted on in argument. Be that as it may, from what has been said, their respective faults will appear.

Charge 10 is not insisted on. Charge O seems to be in the same category with charges 8 and X. Moreover, there is no insistence on it by counsel, further than to say it ought to have been given.

Charge marked S was properly refused. The transcript shows that during the time the plaintiff was confined to his bed from his broken leg, and not able to sit up, he had something like colic one night, accompanied with vomiting; that he went to turn over on his side, to keep from vomiting on his bed, and he felt something like a sting in his thigh, and that when the doctor came, he filled some bags with sand and placed them on each side of his thigh. The evidence tended to show that at that time the leg was re-broken, or the fracture disunited after it began to unite. It is not pretended that the leg was re-broken, by any conscious fault of the plaintiff; but if re-broken, it was a natural result, or one liable to happen flowing from the cause of its being broken in the first instance, having immediate and causal connection therewith. But for the original breaking, the re-breakage could not have occurred.—*Western R. of Ala. v. Mutch*, 97 Ala. 194; 16 Am. & Eng. Ency. Law, 431, 436; *Thompson v. L. & N. R. R. Co.*, 91 Ala. 496.

We have considered all the errors assigned, insisted on in argument, except the motion for a new trial, and we do not discover any reason for interfering with the action of the court in overruling it.

Affirmed.